No. 87-170

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

IN RE THE MARRIAGE OF
DIXIE RAE HALVERSON,

        Petitioner and Respondent,

  and

LARRIE E. HALVERSON,

        Respondent and Appellant.

---

APPEAL FROM:  District Court of the Fifteenth Judicial District,
In and for the County of Daniels,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Browning, Kaleczyc, Berry & Hoven; J. Daniel Hoven,
Helena, Montana

    For Respondent:

        Wright, Tolliver & Guthals; Kenneth D. Tolliver,
Billings, Montana

---

Submitted on Briefs:  Nov. 13, 1987

Decided:  February 2, 1988

Filed: FEB 2 1988

_Ethel M. Harrison_
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Larrie E. Halverson appeals a judgment of the Fifteenth Judicial District Court, Daniels County, dividing marital property of Larrie and Dixie Halverson.

We affirm.

Appellant Larrie Halverson raises the following issues:

1. Did the District Court abuse its discretion when it valued a portion of the Halversons' marital assets as of the date of the parties' separation and valued the remainder of the assets as of the date of dissolution?

2. Did the District Court abuse its discretion when it held that Dixie was entitled to temporary maintenance in accord with the parties' October 4, 1984, stipulation?

Larrie and Dixie Halverson were married on June 19, 1957. During their marriage of nearly thirty years, Larrie and Dixie accumulated marital property consisting of 1,200 acres of deeded farm land, 1,035 acres of agricultural state leases, approximately 24,000 bushels of grain in storage, various farm machinery and miscellaneous personal property. Larrie and Dixie also owe $149,000 to the Federal Land Bank of Sidney and approximately $29,000 to the Citizens State Bank of Scobey.

In February 1984, Dixie and Larrie separated. Larrie moved from the couple's rented home in Scobey to the farm property. Larrie managed the farm property through the summer of 1984. Dixie resided in Scobey and continued in her job as manager of the local radio station. Dixie did not participate in any farm management activities during 1984.

On June 4, 1984, Dixie petitioned to dissolve the marriage. On September 17, 1984, Dixie filed a motion seeking temporary child support and maintenance. Subsequently, the District Court ordered Larrie to show cause why he should

2

not be required to pay $1,000 per month in maintenance. The Court also restrained Larrie from disposing of real or personal property. Prior to hearing, the parties stipulated that Larrie would pay $600 per month in maintenance during the pendency of the action. On October 4, 1984, the District Court granted petitioner Dixie's motion for a decree of dissolution. The court reserved its ruling on property distribution and debt obligations.

As stated earlier, Larrie managed the farm following the parties' separation in February 1984. However, Larrie's farming decisions for 1984 were much different than in earlier years. Larrie did not obtain crop insurance. Larrie elected to seed all land rather than leaving roughly half of it in summer fallow. His election disqualified the Halversons from any federal farm subsidy programs. Larrie then took an extended vacation to Alaska during the summer of 1984. Larrie testified that he "was mistaken about the final date for signing up for [crop] insurance" and failed to do so. Dixie testified that, prior to the insurance deadline, she warned Larrie to purchase crop insurance.

Larrie's 1984 farming decisions resulted in a poor 1984 farm yield. The Halversons received no federal payments or crop insurance proceeds. As a result, on October 30, 1984, Larrie was forced to borrow $21,000 to pay the 1984 land mortgage payment.

On April 6, 1985, Larrie and Dixie entered into a farm partnership agreement. The farm partnership agreement required that the parties evenly split all farm proceeds and debts. Subsequent to entering the agreement, Larrie, over Dixie's objection, applied $23,000 of the 1985 farming proceeds to Larrie's October 30, 1984, note.

3

## Issue 1

Did the District Court abuse its discretion when it valued a portion of the Halversons' marital assets and debts as of the date of separation and valued the remainder of assets and debts as of the date of dissolution?

The standard of review of division of marital property is found in In Re Marriage of Hall (Mont. 1987), 740 P.2d 684, 686, 44 St.Rep. 1321, 1323, which provides:

> As stated by this Court, our functions are as limited as the District Court's functions are broad. We have concluded that in a property distribution review in marriage dissolution, this Court will reverse a District Court only upon a showing that the District Court has acted arbitrarily or has committed a clear abuse of discretion, resulting in either instance in substantial injustice.

In its findings of fact, the District Court found that Larrie "conducted the farm and ranch operation following the parties' separation without participation of [Dixie]." Accordingly, the court valued the farm operation as of the date of separation to avoid "unfairness to the parties which would have resulted from attributing the husband's post separation losses to the wife."

The District Court also found that following separation, the parties' farm land continued to decline in value due to market conditions which were the fault of neither the husband nor the wife. As a result, the court valued the parties' land, farm equipment and personal property at the date of dissolution.

Larrie cites the general rule that when valuing marital estates the District Court is required to determine the net worth of the parties at the time of dissolution. In Re Marriage of Kramer (1978), 177 Mont. 61, 67, 580 P.2d 439,

4

442; Downs v. Downs (1976), 170 Mont. 150, 551 P.2d 1025, appeal after remand 181 Mont. 163, 165, 592 P.2d 938, 939. Therefore, Larrie argues the District Court abused its discretion when it valued the farm operation at the date of separation in February 1984.

A review of the record supports the District Court's finding that Larrie excluded Dixie from her normal role as co-manager of the Halverson farm. Larrie, contrary to the Halversons' traditional farm practices, seeded the land "fence to fence." Larrie's decision to seed fence to fence excluded the Halverson farm from any federal farm subsidy programs. Further, he refused, over Dixie's objection, to purchase crop insurance. The Halversons' low farm yield is directly attributable to Larrie's 1984 management decisions.

Additionally, Larrie refused or was unable to testify to the amount of 1984 farm proceeds. He testified that he used the 1984 farm proceeds, including sales of an undisclosed amount of grain in storage, to make numerous unrecorded "cash" purchases. Larrie refused or was unable to testify to the amount of the above-mentioned purchases. The District Court was then faced with the unenviable task of dividing an unknown amount of farm assets.

The District Court in its findings of fact stated:

> The Court finds the most equitable and clearest manner with which to deal with the parties' post-separation finances is to value these current assets and liabilities at time of separation for purposes of property division.
>
> The husband's 1984 farming operation is easily accounted for. The husband had complete control and, fairly, should be held responsible for the 1984 results. Equitably, it is fair to charge him with the December, 1984, Federal Land Bank payment for the use he made of the

> family farm in 1984. He, then, would
> also be entitled to the fruits of his
> 1984 crop efforts which he, in fact,
> had. Therefore, the indebtedness of
> $23,600.00 incurred post-divorce and the
> 1984 crop proceeds are attributed solely
> to the husband.
>
> To approach this matter otherwise would
> present a nearly insoluble problem. The
> husband had sole access to and control
> of the parties' grain and funds in 1984.
> He testified that he purchased numerous
> antique firearms, post-separation, for
> cash. He declined to have such items
> appraised deeming them "irrelevant" to
> this proceeding. On this state of the
> evidence, it is impossible for the Court
> to fairly allocate the 1984 crop year
> between the parties. The Court declines
> to attempt the impossible.

The District Court did not abuse its discretion when it valued the Halversons' farm operation at the date of separation. If the court had valued the farm operation as appellant Larrie suggests, Dixie would be forced to share responsibility of 1984 debts incurred solely by Larrie.

We note the general rule that proper distribution of marital property requires a finding of net worth at or near the time of dissolution. Hamilton v. Hamilton (1980), 186 Mont. 282, 283, 607 P.2d 102, 103. However, when the application of this rule would create an inequitable disposition, it is proper for the District Court to utilize a differing valuation date. In Re the Marriage of Wagner (Mont. 1984), 679 P.2d 753, 757, 41 St.Rep. 409, 414; In re Marriage of Lippert (Mont. 1981), 627 P.2d 1206, 1208, 38 St.Rep. 625; In Re Marriage of Hunter (1982), 196 Mont. 235, 239, 639 P.2d 489, 491.

The District Court did not abuse its discretion when it valued the Halversons' marital assets.

6

Issue 2

Did the District Court abuse its discretion when it held that Dixie was entitled to temporary maintenance in accord with the parties' October 4, 1984, stipulation?

Prior to the October 4, 1984, show cause hearing, Dixie and Larrie stipulated that Larrie would pay Dixie $600 per month until their property was divided and distributed. The stipulation provided in pertinent part: "That by October 8, 1984, respondent Larrie E. Halverson would pay the petitioner $600 in temporary maintenance, and said payments to continue during the pendency of this action and to be paid to the petitioner by respondent on the 1st of each month." [Emphasis added.]

On April 9, 1985, Larrie and Dixie entered into a farm partnership agreement. Larrie and Dixie agreed to equally divide farm profits and losses. Additionally, Larrie was to receive wages of $500 per month. The farm partnership agreement did not make reference to the parties' October 4, 1984, stipulation. Nor did the agreement contain language addressing the maintenance issue. Subsequent to entering the farm partnership agreement, Larrie discontinued maintenance payments.

In its May 12, 1986, findings of fact and conclusions of law, the District Court found Larrie bound by the stipulation. The court noted that Larrie had failed to modify his maintenance obligation pursuant to § 40-4-208, MCA, and was therefore responsible for the stipulated maintenance.

Larrie contends that his maintenance obligation was terminated when he and Dixie entered the farm partnership agreement. Larrie claims the parties intended the farm partnership would terminate maintenance. However, Larrie failed to produce evidence that the parties' intended to

7

terminate maintenance. Further, the farm partnership agreement is silent to the maintenance issue.

The District Court properly held that the farm partnership agreement did not terminate the maintenance stipulation:

> The husband contends that his obligation to make support was eliminated by the 1985 farm partnership agreement between the parties. However, there is no reference to modification of the stipulated maintenance within the four corners of the agreement. The wife testified that there was no mention of modification of the maintenance prior to her signing the farm partnership agreement. The Court cannot find, on this evidence, a factual basis for terminating a maintenance stipulation which was part of the dissolution proceedings.

Larrie next contends the District Court failed to make proper findings of need and duration required by § 40-4-121 and § 40-4-203, MCA, prior to awarding temporary maintenance. However, the District Court is not required to make such findings when the parties voluntarily entered into the maintenance agreement.

We hold the District Court did not abuse its discretion when it held that Dixie was entitled to temporary maintenance in accord with the maintenance stipulation.

Affirmed.

_____
Chief Justice

We concur:

_____
_____
_____
_____
Justices