(839 P.2d 541)
No. 67,098

In the Matter of the Marriage of Ellen D. Schwien, *Appellee,* and James W. Schwien, *Appellant.*

Opinion filed October 9, 1992.

*Jack N. Stewart,* of Hampton, Royce, Engleman & Nelson, of Salina, for appellant.

*Michael S. Holland,* of Russell, for appellee.

Before LARSON, P.J., ELLIOTT and PIERRON, JJ.

LARSON, J.: James W. Schwien appeals the judgment of the trial court in this divorce action, contending (1) abuse of discretion in not allowing credit to each party for the value of nonmarital property brought into the marriage or received by gift; (2) abuse of discretion in the division of the parties' marital property; and (3) abuse of discretion in ordering him to pay $800 per month child support.

The issues of interest in this case involve an attempt to require credit to be given to each party for the value of nonmarital property brought into the marriage and a ruling as to when assets must be valued, but it is necessary for our decision to set forth in detail the facts related to this failed marriage.

The marriage of Ellen and James Schwien in 1978 united a young man starting a farming business with a school teacher. The marriage resulted in the birth of two children, J.W.S. and R.C.S., currently ages 10 and 8.

At the time of the marriage, James owned a remainder interest in 240 acres of rural real estate, livestock, equipment, and the right to occupy a residence rent-free for 10 years resulting from the repair and improvement of the property. Ellen had $2,000 in a certificate of deposit and a bond.

James worked for his father and commenced farming independently in 1980, utilizing his father's fuel and equipment for three years during which time Ellen worked part-time and assisted James.

In November of 1983, James and Ellen entered into an agreement with James' father, mother, brother, and sister-in-law that created Schwien Farms Partnership of which James and Ellen each owned a one-sixth interest. Ellen assisted with the partnership bookkeeping. James and Ellen rented land and farmed independently of the partnership as well.

Unfortunately, the marital relationship soured, and on July 11, 1989, Ellen filed for divorce. Ellen moved from the farm to a residence in Russell and worked when she could as a paraprofessional in the school system.

The trial was held on July 23, 1990. James and Ellen each presented evidence concerning the values of their one-third interest in Schwien Farms Partnership, assets and liabilities of their independent farming operation, household goods, vehicles, stocks, commodities, investments, and bank accounts. James valued all marital property as of the date the parties separated. Ellen's evidence provided a partnership valuation as of December 31, 1989, and the remaining marital estate as of the date of trial.

The parties agreed with the appraisal of Don Haberer that the Schwien Farms Partnership machinery had a value of $200,275, but as to most other assets and liabilities, the testimony and contentions of the parties were divergent.

Ellen testified that James' remainder interest in the 240 acres of rural real estate was worth $24,800. She claimed no interest in the property and proposed it be set aside to James in the property division. James presented no evidence as to the value of his remainder interest in this property.

James testified that prior to the marriage he owned livestock and equipment worth $10,100; that the prepaid lease under which the couple could live rent free for 10 years was valued at $15,195; that during the marriage he and Ellen had received cash gifts from his parents totalling $3,000; and both had received gifts of fuel and use of equipment valued at $26,637 from his parents during the years 1980 through 1983 to start their separate farming operation. The trial court allowed this testimony over Ellen's objection and James requested credit in the amount of $54,932 for this nonmarital property in the division of assets.

Ellen did not request credit be given to her for premarital assets in the property division.

Testimony showed Ellen received stock, money market accounts, investments, and bank accounts worth approximately $30,000 on July 11, 1989. Ellen used $7,852 to purchase household items necessary for the Russell home and $503 per month to pay monthly expenses. The assets remaining were worth $16,214 at the time of trial. Ellen had received no temporary maintenance, but James was paying her $800 per month child support at the time of trial.

James owned livestock at the time of separation, which he opined was worth $49,550 while Ellen's testimony showed a value

of $52,450. He testified his shop equipment was worth $615 while she claimed it to be worth $3,415. Likewise, he claimed livestock equipment valued at $350, which she valued at $750.

Both agreed that James individually owned grain on hand worth approximately $3,100. Ellen included on an exhibit, which was admitted without objection, hay owned by the parties valued at $12,000. James now claims on appeal that this hay does not exist.

Testimony showed James held patronage refunds worth approximately $4,100, that he had a pickup worth $2,000, cycles worth $500, and that Ellen had a 1983 Chevrolet Caprice in her possession worth $3,500. The parties disagreed concerning the value of household items. James claimed they were worth $6,800 of which Ellen was claimed to have taken $5,600 in value. Ellen claimed the items were worth $3,000 and that they had been evenly divided.

The largest bone of contention was over the value of a one-third interest in the Schwien Farms Partnership. Ellen's partnership valuation expert was a certified public accountant who opined the one-third interest had a $77,201 value by capitalizing the partnership's assumed cash flow. The value was computed by taking an average cash flow of $89,437 before debt reduction, deducting an assumed and fictitious salary of $24,000 (although evidence showed the partnership paid no salaries and the annual withdrawal to *all* partners was in the area of $60,000 annually) and capitalizing $65,437 over seven years at 11.5% interest. The resulting figure was increased by the year end cash balance and value of the co-operative patronage accounts and then reduced by the indebtedness of the partnership plus a further reduction for deferred federal and state income tax because the equipment had been depreciated substantially below its market value.

The validity of this valuation is questionable because it is based on an assumed salary which, if lowered, results in a higher valuation and, if increased, results in a lower valuation. There was no substantial competent evidence as to the basis for the usage of the assumed salary.

The valuation of Schwien Farms Partnership was further complicated because of the failure of its 1989 wheat crop. The partnership had followed a practice of selling the previous years' crops in a subsequent year. It was paid approximately $66,000 in crop

insurance and government deficiency payments in 1989, but the partnership was not required to report these amounts for 1989 income tax purposes because this represented what would normally have been 1990 crop sales.

James' certified public accountant valued the Schwien Farms Partnership as of the date of separation of the parties on July 11, 1989. He utilized the liquidated value of the assets. He used $200,275 as the value of the farm equipment, assumed a disposition cost of 6%, added bank accounts of $13,832, grain on hand of $56,914, and 50% of the patronage accounts, or $10,967, for total assets of $269,971. From this amount, he reduced the notes payable of $74,000, accounts payable of $18,079, and accrued interest expense of $8,266, for total partnership liabilities of $100,345. This resulted in a net worth of the partnership of $169,626, of which James' and Ellen's one-third share was testified to be $56,542 before application of deferred tax liability on appreciation, which was computed to be $21,385, for a net realizable value of the one-third interest in the partnership of $35,157.

Cross-examination of James showed that he had deposited almost $40,000 in his personal account in the first six months of 1990. This appeared to have come from distributions from Schwien Farms Partnership and the sale of his separately held assets. He further testified he had on hand 8,511 bushels of wheat at the time of trial as a result of the 1990 harvest, and it was shown that at the time of trial the partnership had on hand approximately 18,000 bushels of wheat. The indebtedness of the partnership had changed by the time of the trial and the partners had, without consultation with Ellen, purchased a $52,000 tractor, which it paid for by trading in a tractor worth $14,000 and assuming a $39,000 loan.

This confusing factual scenario was further complicated by the parties utilizing evidence of three different dates of valuation with no attempt to provide the trial court with a reconciliation thereof.

The trial court granted a divorce to the parties on the basis of incompatibility; granted joint custody of the minor children with Ellen as the residential parent and reasonable visitation to James; ordered James to continue paying $800 per month child support; and then took the issues of permanent child support, division of property, and attorney fees under advisement.

The trial court issued its opinion on March 27, 1991, in which each party was given the personal property in their respective possession. James was given all of the farming operations and his interest in Schwien Farms Partnership. He was ordered to assume all liabilities and pay Ellen a cash settlement of $90,000 in monthly installments of $1,500 per month until paid in full. James was further ordered to continue to pay $800 per month child support. Each party was ordered to pay their respective attorney fees.

The trial court placed a value of $6,500 on the household items, and granted one-half that value to each party. Ellen was given the remaining stocks, bonds, and bank accounts in her possession with the value of $16,564.71. James received all the remainder interest in the real estate, which the court valued at $40,000. The trial court further found that James was to receive the shop equipment, farm equipment, cattle equipment, cattle, grain, and one-third of the farm partnership, which the court valued at $200,000. The trial court's order made James responsible for the liabilities, which were found to be $60,000, leaving James with assets worth $180,000 according to the trial court's calculations. In order to balance the assets, the trial court ordered James to make the payment described above, which the court indicated would leave him with a net value of properties of $100,000 and Ellen with a net value of $109,814.71.

James' motion to alter and amend judgment was denied on August 5, 1991. This appeal followed.

*Did the trial court abuse its discretion in not allowing credit to each party when dividing the property for the value of nonmarital property brought into the marriage or received by gift during the marriage?*

Although the trial judge properly allowed James to present evidence of the value of nonmarital property brought into the marriage and received by gift during the marriage, he contends neither was given any consideration by the court in arriving at property settlement and division.

What James contends is an abuse of discretion is the trial court's failure to adopt the reasoning of guidelines of several of our metropolitan counties, which provide that nonmarital property should be restored to the spouse bringing it into the marriage,

with any appreciation or enhancement of value occurring during the marriage being credited equally to the parties.

The well-known change in our divorce law made by the Kansas Legislature in 1963 was recognized in *Zeller v. Zeller,* 195 Kan. 452, 459, 407 P.2d 478 (1965), when the court stated:

"The significant change in the law regarding division of property is that the court is no longer required to set aside to the wife the separate property which she brought to the marriage or acquired with her own funds after the marriage. The court now is given authority to divide all of the property owned by the parties, regardless of the source or manner in which acquired, in a just and reasonable manner."

This decision recognized a legislative statement that it is no longer necessary to return nonmarital property to a wife, although we recognize many trial judges now return nonmarital property or an amount equivalent in value to the respective spouse. What the legislature did in effect was to provide a level playing field so that wives and husbands were subject to the same rules.

In making a division of property, the trial court, pursuant to K.S.A. 1991 Supp. 60-1610(b)(1), is obligated to consider

"the age of the parties; the duration of the marriage; the property owned by the parties; their present and future earning capacities; *the time, source and manner of acquisition of property*; family ties and obligations; the allowance of maintenance or lack thereof; dissipation of assets; and such other factors as the court considers necessary to make a just and reasonable division of property." (Emphasis added.)

It is significant that K.S.A. 23-201(b), which applies to this issue, states in relevant part:

"All property owned by married persons . . . whether described in subsection (a) [premarital property and property received during the marriage by gift or inheritance] or acquired by either spouse after marriage . . . shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce. . . . Each spouse has a common ownership in marital property which vests at the time of commencement of such action, the extent of the vested interest to be determined and finalized by the court, pursuant to K.S.A. 60-1610 and amendments thereto."

K.S.A. 1991 Supp. 60-1610(b)(1) states: "The decree shall divide the real and personal property of the parties, whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage or acquired by the spouses'

joint efforts." A trial court is not obligated to award to each party all property owned by such party prior to the marriage, or property inherited or received by gift during the marriage. *McCain v. McCain,* 219 Kan. 780, Syl. ¶ 3, 549 P.2d 896 (1976). See 1 Elrod, Kansas Family Law Handbook § 10.011 (rev. ed. 1990).

Our scope of review of a division of property is well known. Trial courts are vested with broad discretion which will not be disturbed on appeal absent a clear showing of abuse. *Powell v. Powell,* 231 Kan. 456, Syl. ¶ 1, 648 P.2d 218 (1982).

In this case, it is clear that all of the gifts were made equally for the benefit of both James and Ellen during the marriage and refusal to give only James credit for such gifts is logical.

It was reasonable to award James his remainder interest in the rural real estate although the current value assigned to this asset by the trial court had no evidentiary basis. James failed to provide any evidence of the value of this property at the time of the marriage and, in fact, it has been of no economic benefit to either party during the marriage because James' father has continued to enjoy the benefits of his life estate in the property.

The parties may have received a benefit from not paying rent for a 10-year period, but the valuation is questionable and the trial court's refusal to place $15,195 in James' pocket before dividing the rest of the property is understandable.

It is likewise not an abuse of discretion for the trial court to refuse to credit James with the premarital value of the livestock and equipment before dividing the rest of the marital property.

We do not question the importance of guidelines or that they may represent what should be the reasonable expectations of the parties to a marriage. What we are not willing to do is require a trial court to credit a spouse with the entry value of property brought into the marriage or acquired by gift during the marriage before the remaining net worth of the parties is divided.

Unless and until guidelines are adopted by the Kansas Supreme Court of required application throughout the state (as exists with respect to child support guidelines), it is not an abuse of discretion for a trial court to refuse to restore nonmarital property to either spouse or to give direct credit for gifts acquired during the term of the marriage.

The trial court is obligated under K.S.A. 1991 Supp. 60-1610(b)(1) to consider "the time, source and manner of acquisition of property," which appears to have been done in this instance. The court considered the 11-year marriage, the future earning capacities of both parties, and that both parties worked during the marriage in attaining the estate they acquired. This is reflected in the trial court's memorandum of decision. Reasonable persons would agree with the trial court's handling of this issue.

*Did the trial court abuse its discretion in the division of the parties' marital property?*

This issue first raises the question of the dates used by the parties and the trial court in the division of the marital estate. James argues the court correctly found all property was divided as of the separation date, but erred in making its division thereof. For example, he contends the trial court should have valued the stocks and investments awarded to Ellen at their separation date value of $30,715 instead of the $16,565 value as of the trial date.

We were cited no Kansas statute or case which specifically commands the date that should be utilized in the valuation and division of the marital estate. There is no universal rule applied in the United States. Some states apply the date of separation, some require valuation at the time of trial or at the time the divorce is granted, and others allow the time of valuation to be decided by the trial court as the facts in each case dictate. One of the problems in this case was that the parties were extremely adversarial and utilized different valuation dates, which made the trial court's decision difficult.

James relies on *Taylor v. Taylor*, 436 N.E.2d 56 (Ind. 1982); *In re Marriage of Halverson*, 230 Mont. 226, 749 P.2d 518 (1988); and *Johnson v. Johnson*, 771 P.2d 696 (Utah App. 1989), to support his contention that the parties' marital property should have been valued as of July 11, 1989, the date the parties separated and the divorce action was filed.

In *Taylor*, it was not found to be an abuse of discretion for the marital home to be valued at the time of separation rather than at the time the divorce was decreed almost five years later because the property had greatly appreciated in value as a result of the wife's attention. 436 N.E.2d at 59.

In *Halverson,* the general rule was stated that proper distribution of marital property requires a finding of net worth at or near the time of dissolution, but created an exception when the application of the rule would create an inequitable disposition. 230 Mont. at 230.

In *Johnson,* 771 P.2d at 699, the trial court's decision was that a wife was not entitled to 50% of her husband's post-separation income, but in Utah marital assets are valued as of the date the divorce is granted. *Berger v. Berger,* 713 P.2d 695, 697, (Utah 1985).

In several of our sister states, marital property is valued at the time of trial or when the divorce is granted. See, *e.g., Ogard v. Ogard,* 808 P.2d 815, 819-20 (Alaska 1991); *In re Marriage of Brooks,* 138 Ill. App. 3d 252, 260, 486 N.E.2d 267 (1985), *Holbrook v. Holbrook,* 103 Wis. 2d 327, 334, 309 N.W.2d 343 (1981).

An excellent discussion of this problem is found in Goldberg, Valuation of Divorce Assets § 1.10 (1984), which states:

"Even though the majority of jurisdictions which have addressed the issue of when assets should be valued have chosen the termination date as the target date for valuations, many other jurisdictions have been innovative in their approach to this problem. For example, some hold that where hearing on disposition of marital property takes more than one day and a substantial interval occurs between hearing days, the 'date of the hearing' for purpose of a statutory requirement that marital property and debts be valued as of 'the date of the hearing' (if such hearing precedes the date of the decree) is the day when the last evidence is presented on the matter. Some courts have taken a simple approach and tried to value the assets as nearly as practicable to time of trial, or have simply chosen as the proper date for valuation that of the beginning of the dissolution action."

Golden, Equitable Distribution of Property § 7.01 p. 251 (Turner 1992 Supp.) states:

"A growing number of courts are refusing to establish any one mandatory date of valuation. These courts recognize that different dates should control in different cases and they leave the decision to the trial court's discretion. [Citations omitted.]

"Flexible valuation date jurisdictions generally prefer to value the property as of the date of trial, in order that the court's division of property be based upon the most current available financial information. [Citations omitted.]"

Golden recognizes several factual situations may arise in which property will be valued earlier than the trial date: when the

parties have a lack of financial involvement with each other after the separation, when one party dissipates marital assets, when one spouse deliberately delays the divorce, or when marital assets appreciate during separation due to the efforts of one spouse. Golden, Equitable Distribution of Property § 7.01 p. 252.

In several states, the trial court is given the discretion to value the property at the time of separation, at the time the divorce petition is filed, or at the time of the divorce hearing. See *Bachtle v. Bachtle*, 494 A.2d 1253, 1256 (Del. 1985); *Eyler v. Eyler*, 492 N.E.2d 1071, 1074 (Ind. 1986); *Thompson v. Thompson*, 189 Mich. App. 197, 199, 472 N.W.2d 51 (1991); *Bednar v. Bednar*, 193 N.J. Super. 330, 332, 474 A.2d 17 (1984); *Sergi v. Sergi*, 351 Pa. Super. 588, 506 A.2d 928 (1986).

In *Sergi*, the Pennsylvania Superior Court stated:

"[W]e do not attempt to establish a valuation [date] to be used in every situation. To recognize a specific valuation date as a matter of law would deprive the trial court of the necessary discretion required to effectuate economic justice." 351 Pa. Super. at 594.

In *In re Marriage of Harrison*, 13 Kan. App. 2d 313, 315-16, 769 P.2d 678 (1989), we held military retirement pay is marital property subject to division upon dissolution of the marriage. In discussing the two methods commonly used to value a retirement benefit, the present cash value and the reserve jurisdiction method, we expressed no absolute rule as to when the assets had to be valued. The finality of litigation makes it desirable to value retirement benefits at the time a divorce is granted, but we have not in any previous case set down any hard and fast rule that the trial court must follow.

It is essential, however, that a trial court be presented with a common valuation date or testimony of changes in valuation if different dates are being used by both parties as was the case herein. In *Bednar*, the Superior Court of New Jersey concluded that "principles of equity required a common evaluation date for all marital assets. . . . There is no absolutely iron-clad rule for determining the date of evaluation but use of a consistent date is preferable." *Bednar*, 193 N.J. Super. at 332. Some states do allow the trial court to value different marital assets at different times. See, *e.g.*, *Halverson*, 230 Mont. at 230; *Rosenberg v. Rosenberg*, 145 App. Div. 2d 916, 918, 536 N.Y.S.2d 605 (1988).

See also Golden, Equitable Distribution of Property § 7.01 p. 256 ("Flexibility to value different assets on different dates is important, because the factors . . . may not be the same for all assets.").

In this case the parties should use a comparable date for valuation of the partnership to insure fairness and consistency because, with 1989 being a crop failure year and a bountiful wheat crop having been harvested in 1990 just prior to the trial, the farming operations may well have had materially different values based upon the time selected.

We announce no hard and fast rule that requires application in every case. We believe that when the time of valuation becomes an issue in a contested case, the trial court should set such time at the pretrial. This will assist the court to "make a just and reasonable division of property."

We reverse this case because the use of divergent valuation dates resulted in the absence of substantial competent evidence to support the trial court's division of property. "Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. [Citation omitted.] Stated in another way, 'substantial evidence' is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citation omitted.]" *Williams Telecommunications Co. v. Gragg*, 242 Kan. 675, 676, 750 P.2d 398 (1988).

We direct that a common valuation date be agreed upon or directed by the trial court and evidence on retrial be presented with a consistent valuation time. If assets are utilized for living purposes or to purchase other assets, the court should take into consideration the value of the assets at the time of separation as well as those available at the time a distribution is being ordered.

James' arguments that some of the trial court's other findings are not supported by substantial competent evidence also have merit. The values assigned to marital property must be within the range of evidence before the court. *Pennock v. Pennock*, 356 N.W.2d 913, 914 (S.D. 1984).

The trial court valued the shop equipment, farm equipment, cattle equipment, cattle, grains, and one-third partnership inter-

est at a lump sum of $200,000. The evidence produced at trial does not support this valuation. By her evidence and testimony, Ellen valued the property in question at $140,021, while James' testimony and exhibits placed a value of $91,375 on these assets.

A review of the record reveals Ellen included both her value of the one-third interest in the partnership computed based upon its available cash flow and then added thereto a one-third value of the partnership assets. This represents a doubling of the valuation. Ellen's argument that the trial court could easily have valued the property at over $200,000 is erroneous. She includes deferred salaries without evidentiary basis; a tractor that actually had no effect on valuation; grain in storage based on different dates and without any tax effect; and hay which may be of questionable value, although James did not properly challenge its basis.

James did not place a value upon his remainder interest in the real property. Ellen testified the remainder interest was worth $24,800, which does not support the trial court's valuation of $40,000.

Further, there is a difference in the parties' valuation of the liabilities, with Ellen valuing them at $63,835 and James at $40,434, although the trial court's valuation of $60,000 in this instance is within the testimony.

An analysis of the record shows the trial court's decision was not based upon substantial competent evidence. The trial court's findings are in part in excess of the evidence offered by either party, and relying upon those findings to order a cash payment from James to Ellen is an abuse of discretion and reversible error.

James contends the trial court should have equally divided the marital estate. We stated in *Grant v. Grant*, 9 Kan. App. 2d 671, Syl. ¶ 2, 685 P.2d 327, *rev. denied* 236 Kan. 875 (1984), that: "Kansas law does not require an equal split of all property acquired during the marriage, but rather gives the trial court discretion to consider all property to arrive at a just and reasonable division." See *In re Marriage of Sedbrook*, 16 Kan. App. 2d 668, 827 P.2d 1222 (1992).

With a new trial being ordered, we hold this is not one of those "extremely gross and rare situations" where financial penalties should be imposed on the basis of fault. See *In re Marriage*

*of Sommers,* 246 Kan. 652, 657, 792 P.2d 1005 (1990). Evidence of fault should not be considered in the retrial of this case.

*Did the trial court abuse its discretion by ordering James to pay $800 per month child support?*

At trial, both parties presented child support worksheets to the court. Ellen's calculations showed James' net parental child support obligation to be $1,701 per month, while James' figures showed his obligation to be $387 per month. James' contention that the trial court abused its discretion by ordering him to pay $800 per month child support without factual findings on a proper child support worksheet has merit.

In *In re Marriage of Schletzbaum,* 15 Kan. App. 2d 504, Syl. ¶ ¶ 1, 2, 809 P.2d 1251 (1991), Judge Lewis of our court opined:

"The Kansas Child Support Guidelines established by Kansas Supreme Court Administrative Order No. 75 (1990 Kan. Ct. R. Annot. 56) *must be followed by all judges and hearing officers in establishing child support* orders in cases where the guidelines apply.

"A rebuttable presumption of the appropriate amount of child support to be ordered is created by the amount arrived at through the *mandatory use* of the Kansas Child Support Guidelines." (Emphasis supplied.)

We held in *Schletzbaum* that the failure to follow the guidelines is reversible error and in the absence of the trial court making factual findings we are unable to know if it has done so.

There was highly conflicting testimony as to the income that James received during the first six months of 1990, but sufficient evidence was presented to sustain the trial court's order had the required child support worksheet been prepared to show the guidelines were followed.

The parties suggested to us on oral argument that there may have been a material change in circumstances which has occurred between the time of trial and the date of this opinion.

The child support award is reversed with instructions to the trial court to make the necessary findings and determine the awards required under the guidelines as of the time of trial as well as at the time of the new trial, which is required under our ruling herein.

Reversed and remanded for retrial in accordance with the instructions of this opinion.