NOT DESIGNATED FOR PUBLICATION

No. 123,789

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

LOGAN HARDIN,
*Appellant*,

and

CHELSEA HARDIN, n/k/a CHELSEA BOYD,
*Appellee*.

MEMORANDUM OPINION

Appeal from Grant District Court; BRADLEY E. AMBROSIER, judge. Opinion filed April 8, 2022. Affirmed in part and reversed in part.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Wayne R. Tate*, of Tate & Kitzke, L.L.C., of Hugoton, for appellee.

Before HILL, P.J., POWELL and CLINE, JJ.

POWELL, J.: This is an appeal from a divorce action between Logan Hardin and Chelsea Hardin. After hearing evidence, the district court issued a ruling granting the divorce and dividing their marital property. Logan then sought to alter or amend the district court's judgment, which the district court denied. At Chelsea's request, the district court also imposed a sanction against Logan for filing a frivolous motion. Logan now appeals, challenging the district court's property division and the imposition of the sanction. Chelsea asks us to award her attorney fees on appeal. After considering the

record and briefs filed by the parties, we affirm the district court's property division but reverse the sanction. We also deny Chelsea's request for attorney fees on appeal.

FACTUAL AND PROCEDURAL BACKGROUND

Logan and Chelsea met in April 2016 in Lubbock, Texas, and they began living together in August 2016. Eventually, the couple moved to Ulysses, Kansas, to a residence Logan purchased in July 2017. The couple married on June 9, 2018; Logan filed for divorce on March 11, 2020.

At trial, the parties agreed that they should retain most of their assets according to premarital ownership and that the value of certain assets should be based on the accumulated value from the date of marriage to the divorce filing. The lone exception was a joint checking account. The parties agreed that before getting married they had separate bank accounts. After the marriage, the couple wanted to create a joint bank account and agreed to add Chelsea's name to Logan's account, a Wells Fargo account, because it had a higher balance. The Wells Fargo account had a balance of just over $37,141 on June 8, 2018, the day before the marriage. On July 13, 2018, Chelsea transferred the remaining money in her account—in the form of two deposits of $311.12 and $1,380—to the Wells Fargo account. Thereafter, the couple agreed they each had the authority to control the funds in the Wells Fargo account.

The day before Logan filed for divorce, the Wells Fargo account had a balance of about $54,934. Logan withdrew $37,141 from the Wells Fargo account, believing that he was entitled to his premarital funds. The next day, Chelsea withdrew the remaining balance to her own personal account.

Similarly, Logan testified that he had a separate Wells Fargo savings account before the marriage as well. He provided a bank statement showing that the balance of

this account was approximately $2,118 on the day he filed for divorce, which Chelsea transferred to her own account that same day. Logan explained that he did not oppose Chelsea receiving that money along with the postmarital income accumulated in the Wells Fargo account because he felt that was "fair."

Logan believed the district court should assign a value of $16,102 to the Wells Fargo account because that amount represented the postmarital income after subtracting the amounts each party brought into the marriage. Under Logan's proposed property division, his net equity would equal $35,518 and Chelsea's net equity would equal $25,409. Logan also took the position there should be no cash equalization awarded and that this would be an equitable distribution because he did not want the divorce to be a "windfall" for either party "considering what was brought into the marriage." Logan acknowledged the couple did not sign a prenuptial agreement and he could have kept the Wells Fargo account separate.

Chelsea, on the other hand, took the view the district court should assign a value of $54,934 because that was the amount remaining in the Wells Fargo account on the date the divorce was filed. Under Chelsea's proposed property division, Logan's net equity would equal $84,246 while hers would equal $14,755. As a result, Chelsea requested a cash equalization payment of $34,745 "so that there is a 50/50 division of assets and debts." She believed Logan's proposal was "insulting" and unfair because there was no prenuptial agreement and because he kept many of the couple's assets.

The day following the end of the trial, the district court issued a journal entry and decree of divorce but reserved ruling on an equitable division of the parties' property. Subsequently, the district court issued a written order of property division. Regarding the Wells Fargo account, the district court found:

"Both parties had accounts with Wells Fargo at the time of the marriage. Because Logan's account was the larger of the two, the parties chose to transfer Chelsea's money into Logan's account and make that account joint. *It was clear that Logan understood the consequences of creating this joint account at the time he did so. It was also clear that Logan understood the availability of a prenuptial agreement and the ramifications of not entering into such an agreement, yet he chose not to do so. This Court will not do by decree what the parties themselves chose not to do by contract.* Due to the parties' conduct in creating the joint account and, how from marriage until the time of separation, the parties both jointly had access to all those funds and jointly placed money in the account, the Court will set the value of the account at $54,934." (Emphasis added.)

The district court also found that each party would be responsible for their own attorney fees. As a result of the district court's property division, Logan enjoyed a net equity of $72,709 while Chelsea only had a net equity of $20,680. Accordingly, the district court ordered Logan to pay a cash equalization payment of $26,014.50 to Chelsea.

Logan then filed a motion to alter or amend judgment, asking the district court to reconsider its valuation of the Wells Fargo account, specifically requesting the district court to exclude the amount of money in the Wells Fargo account acquired before the marriage from his share of the marital estate and find that no cash equalization payment was necessary. For support, Logan asserted "the time, source and manner of the acquisition of property allows a court to place great weight on when the property was acquired." He also claimed there was no authority that allowed a district court to consider the lack of a prenuptial agreement when equitably dividing property and argued the court's property division was inequitable.

Chelsea responded by attacking Logan's motion as frivolous and asked the district court to enter sanctions against Logan under K.S.A. 2020 Supp. 60-211 in the amount of $500.

At the hearing on Logan's motion, the district court observed that Logan's motion had failed to cite to any statutory authority supporting Logan's motion. Logan's counsel replied that the statute authorizing motions to alter or amend the judgment, K.S.A. 2020 Supp. 60-259, supported the motion. The district court then asked for further clarification, stating, "I would assume that—that your basis, in having read your—your pleadings, is—is under (b), erroneous ruling or instructions by the Court." Logan's counsel agreed. During the hearing, Logan's counsel focused on the district court's reliance on the lack of a prenuptial agreement as a basis for dividing the Wells Fargo account and asked the district court to reconsider its valuation of that particular asset.

The district court also asked Logan's counsel to provide authority for the proposition made in the motion that "great weight" should be placed on the timing of any property acquired by a party. Logan's counsel directed the district court's attention to the cases cited in another paragraph of the motion, as well as a treatise not cited in the motion. The district court then asked Logan's counsel if she believed there were errors made in how the district court outlined the relevant authorities for property division in its ruling, to which counsel responded, "No, sir." The district court further pressed Logan's counsel to identify what the "clear error" in the ruling was. Logan's counsel identified the error being the district court's finding that "[t]his Court will not do by decree what the parties themselves chose not to do by contract."

At the close of the hearing the district court announced its ruling from the bench:

"So, I want it to be clear that [Logan] is bringing [the] motion pursuant to K.S.A. 60-259, specifically the need to correct clear error.

"I think the order that I entered very clearly sets forth, and I think [Logan] agrees with the controlling statute, as well as case law that sets forth what the requirements are. What they are complaining about is one sentence in the six page order.

"The record certainly speaks for itself. I just felt that [Chelsea's counsel] did a very good job in the cross-examination of [Logan], and I bought that argument. I applied

5

the factors as I'm required to under Kansas law, and I see absolutely no need to collect—to correct a clear error.

"I struggle a lot on the—the request for sanctions, because I certainly don't ever want to be in a position where—where somebody is getting—getting punished for asking the Court to look at something else.

"But, in this particular case, I—I just cannot understand from the motion, and what I've heard today, that there is any kind of basis for asking for the relief that they ask for in the motion.

"I understand not being happy. I get it. I wish I didn't have to divide people's property. But—but, I'm not seeing any good faith basis for clear error based on that one sentence."

As a result, the district court announced it would grant Chelsea's request for a sanction in the amount of $500 for attorney fees in defending the motion. A written journal entry memorializing the district court's ruling was subsequently filed.

Logan timely appeals.

I.     DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DIVIDING THE MARITAL PROPERTY?

Logan argues that the district court abused its discretion in the division of property.

*Standard of Review*

As both parties correctly note, a district court has broad discretion when adjusting the property rights of the parties involved in a divorce action; thus, we will only review such a division for an abuse of discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002). A district court abuses its discretion if its decision rests upon "a legal

6

or factual error or if no reasonable person would agree with the court's decision." *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 261, 452 P.3d 392 (2019). As the party asserting error, Logan bears the burden of showing the district court abused its discretion. See *In re Marriage of Hair*, 40 Kan. App. 2d 475, 480, 193 P.3d 504 (2008).

*Analysis*

A district court's division of property in a divorce action is governed by K.S.A. 2020 Supp. 23-2801 et seq. Although the ultimate division of property must be just and reasonable, it need not be equal. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 715, 229 P.3d 1187 (2010).

> "In making the division of property the court shall consider: (1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property." K.S.A. 2020 Supp. 23-2802(c).

The crux of Logan's appeal rests upon his view that the district court should have subtracted certain funds from the Wells Fargo account based on the parties' premarital contributions. By not doing so, Logan contends, the district court erred.

1.     *Definition of marital property in Kansas*

First, Logan claims the district court erred as a matter of law by misunderstanding the statutory definition of marital property. As Logan correctly points out, Kansas law dictates:

"(a) All property owned by married persons, including the present value of any vested or unvested military retirement pay, or, for divorce or separate maintenance actions commenced on or after July 1, 1998, professional goodwill to the extent that it is marketable for that particular professional, whether described in K.S.A. 2020 Supp. 23-2601, and amendments thereto, or acquired by either spouse after marriage, and whether held individually or by the spouses in some form of co-ownership, such as joint tenancy or tenancy in common, shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment.

"(b) Each spouse has a common ownership in marital property which vests at the time of commencement of such action, the extent of the vested interest to be determined and finalized by the court, pursuant to K.S.A. 2020 Supp. 23-2802, and amendments thereto." K.S.A. 2020 Supp. 23-2801.

Put another way, Kansas follows equitable distribution principles of property division rather than community property principles, meaning that *all* property—whether owned individually or jointly and regardless of when or how it is acquired—is subject to division in a divorce proceeding. See *McCain v. McCain*, 219 Kan. 780, Syl. ¶ 3, 549 P.2d 896 (1976); 2 Elrod, Kansas Law and Practice:  Kansas Family Law § 10:1 (2021 ed.) (defining community property principles).

According to Logan, the district court erred because it mistakenly believed that adding Chelsea to the Wells Fargo account amounted to a "gift" of premarital funds of $37,141. Logan's argument appears to be that the district court placed too much emphasis on the fact that Logan agreed to combine the couple's bank accounts because the funds would have been subject to division anyway under Kansas law upon the commencement of the divorce, even if kept in separately owned and maintained bank accounts.

We are unpersuaded by Logan's argument because he is the one who seeks to exclude from the marital estate any premarital funds contained in the Wells Fargo account. It is well established that "[a] trial court is not obligated to award to each party

all property owned by such party prior to the marriage, or property inherited or received by gift during the marriage. [Citations omitted.]" *In re Marriage of Schwien*, 17 Kan. App. 2d 498, 505, 839 P.2d 541 (1992). Thus, the district court did not err in dividing the entirety of the Wells Fargo account even though $37,141 of Logan's premarital funds were contained in the account.

2.  *Absence of a prenuptial agreement*

Next, Logan contends the district court erred as a matter of fact by misstating his testimony about the absence of a prenuptial agreement and as a matter of law by basing its property division on the absence of a prenuptial agreement.

At trial, the following exchange occurred while Chelsea's attorney was cross-examining Logan:

"Q:     Didn't have a prenupt [sic]; did you?
"A:     No, sir.
"Q:     And, you do acknowledge you could have kept this as separate property by keeping it in a separate account without Chelsea's name on it?
"A:     Yes, sir. That would have been a possibility.
"Q:     But, you didn't do that; did you?
"A:     No, sir. Like I said, I had no intent for the marriage to ever get to this point. So, I didn't feel like that was necessary."

According to Logan, the district court committed a factual error by misremembering this testimony in two ways. First, Logan claims the district court wrongly made a finding in its property division ruling that "[i]t was also clear that Logan understood the availability of a prenuptial agreement and the ramifications of not entering into such an agreement, yet he chose not to do so. This Court will not do by decree what the parties themselves chose not to do by contract." Second, Logan claims that at the

9

hearing on the motion to alter or amend judgment the district court erred by asking Logan's counsel if she remembered Logan being cross-examined "about a prenuptial agreement, and what that is, and how they're available."

We see no factual or legal error by the district court here. In fact, we find the district court's approach to be entirely reasonable. We interpret the district court's approach to be that because Logan did not obtain a prenuptial agreement from Chelsea guaranteeing his right to keep all premarital property after a divorce, the law did not guarantee his demand to have his premarital contributions to the Wells Fargo account awarded to him. As we have already explained, the district court was entitled to equitably divide all the parties' property, including such property that each party brought into the marriage. See K.S.A. 2020 Supp. 23-2801 et seq. Therefore, there exists no legal requirement entitling Logan to the return of his premarital assets after a divorce. See *Schwien*, 17 Kan. App. 2d at 505.

Admittedly, the district court may have overstated the extent of Logan's awareness of the potential need for a prenuptial agreement, but the only material fact relevant to the district court's property division is that no such agreement existed. In that way, Logan's testimony about understanding the consequences of adding Chelsea to the Wells Fargo account goes hand-in-hand with his testimony about the lack of a prenuptial agreement. Put simply, we find no abuse of discretion based on Logan's claim of factual error on this point because the district court's findings related to the Wells Fargo account are supported by substantial competent evidence.

As for Logan's claim of legal error, he cites several cases holding in other contexts that a district court abuses its discretion when it fails to consider certain required statutory factors or goes outside the proper legal framework for making a decision. See *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 569, 232 P.3d 856 (2010) (finding abuse of discretion when tribunal arbitrarily denied motion for attorney fees); *State v. Green*, 283

Kan. 531, 548, 153 P.3d 1216 (2007) (finding no abuse of discretion in denying postsentencing motion to withdraw plea); *Dragon v. Vanguard Industries, Inc.*, 277 Kan. 776, 779, 89 P.3d 908 (2004) (abuse of discretion exists when trial court goes outside legal framework). He also notes that no statutory or caselaw authority has recognized the absence of a prenuptial agreement as a "necessary" factor to consider when making a property division ruling.

Logan seems to be arguing that the district court was prohibited from considering the absence of a prenuptial agreement simply because that is not a factor explicitly listed in K.S.A. 2020 Supp. 23-2802(c) and because no Kansas court has determined such consideration is "necessary to make a just and reasonable division of property." K.S.A. 2020 Supp. 23-2802(c)(10). Yet as Chelsea correctly notes, the list of statutory factors is nonexhaustive because K.S.A. 2020 Supp. 23-2802(c)(10) contains a catch-all provision which allows the district court to consider any "such other factors as the court considers necessary to make a just and reasonable division of property."

Logan misconstrues the district court's ruling by focusing too narrowly on the absence of a prenuptial agreement when the district court made clear that "the parties' conduct in creating the joint account" was the primary consideration. Again, the district court did not err and it did not rely only on the absence of a prenuptial agreement as a deciding factor in its property division ruling. The district court essentially treated the absence of such an agreement as a byproduct of Logan's conscious decision to commingle Chelsea's funds with his in the Wells Fargo account shortly after the marriage. For these reasons, Logan fails to show that the district court erred as a matter of law when it factored the absence of a prenuptial agreement into its property division ruling.

3.    *Length of the marriage*

Logan also contends the district court erred as a matter of law by not relying on the length of the marriage as a major factor in its property division ruling.

Logan relies on this court's decision in *In re Marriage of Rindels*, No. 100,940, 2010 WL 445691 (Kan. App. 2010) (unpublished opinion). Like Logan, the husband in *Rindels* came into the nearly five-year marriage with significantly more overall assets. The panel affirmed the district court's property division that resulted in the wife receiving only 38% of the marital estate based on "the short duration of the marriage, the premarital nature of certain property, and the parties' pattern of keeping separate finances." 2010 WL 445691, at *6. In making this conclusion, the panel observed that the percentage awarded to the wife "was substantially higher than the percentage of total assets she brought to the marriage." 2010 WL 445691, at *6.

This, according to Logan, shows the district court abused its discretion here because it failed to give greater weight to the length of the marriage—in this case just under 20 months—and that a proper consideration of this factor would lead to the parties retaining only what they brought into the marriage. In response, Chelsea argues that *Rindels* can be distinguished because the panel also relied on the fact that the parties maintained separate finances during the marriage, whereas here the parties almost immediately established a joint bank account.

Our standard of review is decisive on this point. In the absence of any legal or factual error, we must uphold a district court's division of property if a reasonable person could agree with it. In our view, the *Rindels* panel affirmed the district court's property division as reasonable, despite its inequality, because of the short duration of the marriage, the premarital assets the parties brought into the marriage, and the parties' decision to keep their finances separate. 2010 WL 445691, at *6 ("In summary, it cannot

12

be said that no reasonable person would have made a division of property similar to that made by the district court here."). But the *Rindels* panel made no pronouncement that the law required such property division given the facts of that case.

The same is true here. The law allowed the district court to award Logan his premarital contribution to the Wells Fargo account. In fact, the district court largely followed this approach with the parties' other assets. But it chose to divide the Wells Fargo account differently because the parties commingled their funds in the account and each independently withdrew funds from it. We find this approach reasonable based upon the record before us. For us to reject the district court's division, Logan had to persuade us that no reasonable person would have acted as the district court did here. Because we cannot make that finding, there was no abuse of discretion by the district court with its property division order.

II.     DID THE DISTRICT COURT ERR IN IMPOSING A SANCTION?

Logan next argues the district court erred in sanctioning him $500 in attorney fees for filing a frivolous motion to alter or amend judgment.

A district court's decision to impose sanctions under K.S.A. 2020 Supp. 60-211 is discretionary; thus, we will not disturb a district court's decision to impose sanctions absent a showing of an abuse of discretion. *In re Marriage of Bergmann & Sokol*, 49 Kan. App. 2d 45, 50, 305 P.3d 664 (2013). Judicial discretion is abused when the action is arbitrary, fanciful, or unreasonable, or is based upon an error of law or fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). As the party asserting error, Logan bears the burden of establishing the district court abused its discretion. See *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

13

In *Wood v. Groh*, 269 Kan. 420, 431, 7 P.3d 1163 (2000), the Kansas Supreme Court set forth a list of nine factors for a district court to consider when determining whether to sanction a party under K.S.A. 1999 Supp. 60-211. That list includes:

"(1) whether the improper conduct was willful or negligent;

"(2) whether it was part of a pattern of activity or an isolated event;

"(3) whether it infected the entire pleading or only one particular count or defense;

"(4) whether the person has engaged in similar conduct in other litigation;

"(5) whether it was intended to injure;

"(6) what effect it had on the litigation process in time or expense;

"(7) whether the responsible person is trained in the law;

"(8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and

"(9) what amount is needed to deter similar activity by other litigants. [Citation omitted.]" *Wood*, 269 Kan. at 431.

Notably, there is nothing in the record to suggest that the district court explicitly considered the *Wood* factors when deciding whether to impose a sanction. However, at no point did Logan ask the district court for additional findings or explanations of its ruling. When no objection is made to a district court's findings of fact or conclusions of law based on inadequacy, we can presume the district court found all facts necessary to support its judgment. *State v. Jones*, 306 Kan. 948, 959, 398 P.3d 856 (2017).

According to K.S.A. 2020 Supp. 60-211(b)(1)-(2), any attorney or party signing and submitting a pleading or written motion to the court certifies:

"(1) It is not being presented for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation;

"(2) the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law."

Chelsea's written response opposing Logan's motion to alter or amend judgment simply branded Logan's motion as frivolous and requested a judgment against Logan of $500 pursuant to K.S.A. 2020 Supp. 60-211.

At the outset of the hearing on Logan's motion, the district court queried Logan's counsel under which statute, K.S.A. 2020 Supp. 60-259 or K.S.A. 2020 Supp. 60-260, the motion was brought. Although Logan's motion was titled "Motion to Alter or Amend Judgment," the district court made the correct observation that no motion for "reconsideration" existed in the statutes. Logan's counsel said the motion was filed pursuant to K.S.A. 2020 Supp. 60-259. The district court then "assum[ed]," after reading the motion, that the basis for Logan seeking relief was the court's "erroneous ruling or instructions" under K.S.A. 2020 Supp. 60-259(a)(1)(B). When pressed by the district court, Logan's counsel conceded this point.

However, Logan's written motion did not specify that it was brought under K.S.A. 2020 Supp. 60-259(a)(1)(B). Moreover, K.S.A. 2020 Supp. 60-259(a)(1)(A) allows a motion to alter or amend judgment on the grounds the district court abused its discretion. Our reading of Logan's motion suggests it could easily fall under this provision of the statute as well.

In the journal entry, the district court noted it was granting the request for a sanction because "there was no factual or legal support for [Logan's] filing of the Motion." At the hearing on the motion, the district court explained from the bench:

"I just cannot understand from the motion, and what I've heard today, that there is any kind of basis for asking for the relief that they ask for in the motion.

"I understand not being happy. I get it. I wish I didn't have to divide people's property. But—but, I'm not seeing any good faith basis for clear error based on that one sentence [referring to the absence of a prenuptial agreement]."

In short, the district court found that a sanction was appropriate simply because Logan had not persuaded the district court that the property division ruling should be reconsidered. In essence, the district court ruled that in the absence of a factual or legal error, Logan's effort to get the district court to reconsider its property division made under its broad discretionary authority was frivolous. We must disagree with such a conclusion. If that were true, any unsuccessful motion to alter or amend the judgment of a district court's ruling made under an abuse of discretion standard would be subject to sanctions. This cannot be the law. See *In re Marriage of Bos*, No. 109,850, 2014 WL 1796155, at *5 (Kan. App. 2014) (unpublished opinion) (unsuccessful appeal in face of abuse of discretion standard not frivolous). Accordingly, we find the district court erred in declaring Logan's unsuccessful motion to alter or amend the judgment frivolous and thereby abused its discretion in imposing a sanction under K.S.A. 2020 Supp. 60-211 on that basis.

Parenthetically, we note that had Chelsea instead sought $500 in attorney fees under K.S.A. 2020 Supp. 23-2715, which would have allowed the district court to award such fees "as justice and equity require," then an award by the district court made under these facts would likely have been appropriate. Instead, Chelsea sought a sanction under K.S.A. 2020 Supp. 60-211. Thus, for the reasons we have articulated, we reverse the district court's imposition of the $500 sanction against Logan.

III.    SHOULD WE GRANT APPELLEE'S MOTION FOR APPELLATE ATTORNEY FEES?

As a final matter, Chelsea timely filed a motion under Supreme Court Rule 7.07(c) (2022 Kan. S. Ct. R. at 51) to recover her appellate attorney fees from Logan for what she sees as a frivolous appeal. Chelsea asserts Logan brought the appeal "only for the purpose of harassment and delay" and notes that all the issues he raises were rejected below and are reviewed for an abuse of discretion. Logan filed no response to this motion.

A party may recover appellate attorney fees "[i]f an appellate court finds that an appeal has been taken frivolously, or only for the purpose of harassment or delay." Rule 7.07(c) (2022 Kan. S. Ct. R. at 52). An appeal must be devoid of merit to be deemed frivolous for purposes of assessing the appellee's attorney fees against the appellant. See *Peoples National Bank v. Molz*, 239 Kan. 255, 257, 718 P.2d 306 (1986) (defining "frivolous appeal" as one presenting no justifiable question and "readily recognized as devoid of merit in that there is little prospect that it can ever succeed").

Contrary to Chelsea's assertions, Logan's appeal is not devoid of merit to warrant characterization as frivolous. Although his arguments for excluding his premarital funds from the Wells Fargo account were not ultimately successful, that does not mean they entirely lacked a colorable basis for relief. Moreover, this court has previously rejected a bright-line rule that "any unsuccessful appeal in the face of an abuse of discretion standard ought to require the appellant to pay the appellee's attorney fees." *In re Marriage of Bos*, 2014 WL 1796155, at *5. Given the fact that Logan was partially successful in his appeal due to our reversal of the district court's imposition of a sanction under K.S.A. 2020 Supp. 60-211, an award of appellate attorney fees to Chelsea in this instance would not be appropriate. Chelsea's request for appellate attorney fees is denied.

Affirmed in part and reversed in part.

17