(82 P.3d 528)

No. 90,478

# In the Matter of the Marriage of DAVID L. KUZANEK, *Appellant,* and KAREN K. KUZANEK, *Appellee.*

Opinion filed January 16, 2004.

*Susan D. Szczucinski,* of Szczucinski Law Firm, of Overland Park, for appellant.

*Nathalie C. Elliott* and *Richard L. Becker,* of Levy and Craig, P.C., of Overland Park, for appellee.

Before MARQUARDT, P.J., ELLIOTT, J., and PHILIP C. VIEUX, District Judge, assigned.

VIEUX, J.: David L. Kuzanek appeals the trial court's denial of his motion to terminate maintenance payments to Karen K. Kuzanek. We reverse.

David and Karen were divorced in June 1999 following an 18-year marriage. The journal entry of divorce incorporated the parties' separation agreement, which ordered David to pay spousal maintenance for 110 months, or until any of three alternative conditions occurred, one of which was Karen's cohabitation with an unrelated adult male for more than 30 days.

In October 2002, David filed a motion to terminate maintenance based on Karen's alleged cohabitation with Robert Potemski. A hearing was held in February 2003, at which time David's motion was denied. In denying the motion, the trial court found that David had failed to meet his burden of proof to demonstrate cohabitation as defined in *In re Marriage of Kopac*, 30 Kan. App. 2d 735, 47 P.3d 425 (2002). The trial court noted that some marital-like obligations occurred in the relationship, but because there was a landlord-tenant arrangement with a written lease, no sharing of finances, and no holding out as husband and wife, cohabitation as defined in *Kopac* had not been proven. David timely appeals.

Kansas has an unambiguous and accepted legal meaning for cohabitation. In order for two adults to cohabitate, they must live together and assume the marital rights, duties, and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations. *Kopac*, 30 Kan. App. 2d at 737. The definition of cohabitation supplied by the courts is most imprecise in actual practice and application. This court appreciates the difficulty of applying this concept to any particular case. While many of the common attributes of marriage should be considered and are important to any decision involving cohabitation, the court must also focus upon the financial aspects of the matter. In Kansas, spousal maintenance is predicated upon financial need and financial ability. *In re Marriage of Sommers*, 246 Kan. 652, 658, 792 P.2d 1005 (1990).

Where a significant relationship exists between an individual receiving spousal support and an unrelated adult of the opposite sex which carries colorable attributes of a marriage-like relationship, and where the unrelated adult supplies a material financial gain or benefit, either through direct exchange of money or in-kind services to the one receiving spousal support, then it is cohabitation within the context of domestic law in Kansas. Such relationships should not be masked by use of a legal device, such as a lease agreement if, when stripped away, cohabitation clearly exists.

Under the facts of this case, it is important to first examine the evidence and determine if Karen and Potemski were in fact landlord and tenant.

It is undisputed that Karen leased rooms in her home to Potemski, with whom she had a significant long-term romantic relationship, which included occasional sexual relations. Karen contends that notwithstanding these facts, her relationship with Potemski was essentially a landlord/tenant relationship with a written lease. This is a suspect contention. At the time of the hearing, Potemski had lived in Karen's home with her and her two children for approximately 1 year. He did not maintain a separate residence. Potemski kept some of his clothes and his computer in Karen's bedroom. They had an exclusive sexual relationship for approximately 4 years. Potemski had attended some of Karen's children's school functions and had power of attorney to authorize medical treatment of the children. He purchased sports equipment for one child and sometimes gave the children money. Potemski was listed as a contact person on one of the children's sports rosters. He spent Christmas with Karen and her family, did household chores, occasionally cooked for the family, babysat the youngest child without compensation, and provided Karen's oldest child with a cell phone. Potemski testified that he generally bought his own groceries and paid rent to Karen as a tenant in her home. He admitted to doing the family's laundry in exchange for the use of the laundry facilities.

The nature and extent of the relationship between Karen and Potemski is clearly not that of a landlord/tenant or a mere friend. Tenants and mere friends simply do not commonly conduct themselves in the manner that Karen and Potemski have.

On appeal, this court is to determine whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. An appellate court's review of conclusions of law is unlimited. *Gillespie v. Seymour,* 250 Kan. 123, 129, 823 P.2d 782 (1991).

Here, the trial court's reliance on the parties' written lease to refute a finding of cohabitation is misplaced. Within the facts of this case, which included an exclusive 4-year sexual relationship, the lease was a transparent legal device.

When the lease is stripped away, it is abundantly clear that Karen and Potemski were cohabitating. There is clear evidence of a material and significant sharing of expenses through payments nominally denominated as rent as well as payment in kind with personal and household services to the party receiving spousal support. Additionally, within the factual confines of this case, the fact that Karen and Potemski did not hold themselves out to be husband and wife and had no joint property is of no particular consequence.

The trial court erred when it denied David's motion to terminate maintenance payments.

Reversed.