(193 P.3d 504)
No. 98,291

In the Matter of the Marriage of LEONA R. HAIR, *Appellant,* and TERRY M. HAIR, *Appellee.*

Opinion filed October 3, 2008.

*Christina E. Gondring,* of Berkowitz, Cook & Gondring, of Kansas City, Missouri, and *Keith C. Sevedge,* of Lenexa, for appellant.

*J. Ryan Hare* and *Lindsay A. Hare,* of Erker, Norton & Hare, L.L.C., of Olathe, for appellee.

Before MALONE, P.J., ELLIOTT and GREEN, JJ.

*Per Curiam*: Leona R. Hair appeals the district court's decree of divorce which awarded certain property to Terry M. Hair and denied Leona's request for spousal maintenance. Leona claims: (1) The district court erred in setting aside certain property to Terry and (2) the district court abused its discretion in denying Leona spousal maintenance. We affirm.

Leona filed for divorce from Terry on September 6, 2005. The district court entered temporary orders requiring Terry to pay spousal maintenance in the amount of $841 per month and child support in the amount of $770 per month. However, by the time the parties reached trial, the children were emancipated and the only contested issues involved the property division and whether to award spousal maintenance to Leona.

## Facts regarding property division

The parties owned three homes in Kansas—their marital home, a duplex in Olathe, and a home in Lawrence. Their marital home appraised for $157,500 and was encumbered by a mortgage in the amount of $85,700. Further, the marital home needed approximately $30,000 in repairs. The duplex appraised for $117,500 and was encumbered by a mortgage in the amount of $101,000. Finally, the home in Lawrence, which was purchased because one of the parties' daughters attended college in Lawrence, appraised for $158,000, but that amount did not include improvements that were made on the home since the appraisal. Further, at the time of the trial, there were two mortgages on the home in Lawrence, one for $92,000 and the other for $11,000.

At trial, Terry testified that the parties spent nearly $40,000 repairing the Lawrence home throughout their marriage. To upgrade and renovate the Lawrence property, the parties took out the loan for $85,700 on the marital residence. Further, after the parties separated, Terry spent $4,000 on replacing the heating and cooling systems in the duplex. During the divorce proceedings, Leona was living in the marital home, while Terry testified that he was living in his deceased father's home, where he had lived since May 2006 rent free. Terry's father's estate was not finalized at the time of the divorce.

The parties also owned three savings and retirement accounts, including Terry's Kansas Public Employees Retirement System (KPERS) account of $100,000, an AXA Enterprise retirement account of $32,000, which was funded with direct withdrawals from Terry's paycheck, and an ING account of $15,000. The parties both requested that these accounts be equally divided, although Terry requested that the AXA Enterprise account only be equally divided so long as the district court restored his inheritance.

Finally, the parties owned World Savings bank accounts, which included a certificate of deposit (CD) in the amount of $53,631. Terry testified that a significant portion of the money in the World Savings accounts came from his father's inheritance. Terry's father passed away in March 2005, and Terry testified that throughout his father's lifetime Terry received approximately $162,500 in inheritance and gifts from his father in various CDs, including the World Savings CD worth $53,631. While the CD had remained in the same form since it passed from Terry's father, the remaining inheritance was commingled into the World Savings bank accounts and mixed with the rest of the parties' money.

Leona testified that she did not recall the source of the money in the World Savings accounts. She testified that Terry's father had provided the couple with various CDs, which she maintained they received in the late 1970's and paid taxes on the interest every year since. However, Leona also testified that the parties had three or four CDs of their own.

Regarding the CD for $53,631, Leona testified that her name was on the CD and the tax returns showed that the parties filed jointly and paid taxes on the interest from the CD. Both parties agreed that all the income generated by the CD went to Terry's father. However, while Terry testified that his father would give them money back at Christmas to offset the amount they were taxed on the CD, Leona testified that Terry's father never paid them back.

At trial, Leona asked the district court to equally divide the World Savings accounts. Leona maintained that the CD was a gift from Terry's father to both of them, which they possessed since the late 1970's. Terry, while agreeing that the World Savings ac-

counts were joint accounts, asked the district court to set aside to him the CD and to restore to him $51,000 of inheritance money that was used to pay off Leona's minivan and to renovate the Lawrence home.

*Facts regarding maintenance*

At trial, Leona asked the district court to award her spousal maintenance in the amount of $1,499 per month for 10 years and 9 months. Leona testified that she worked as a nurse at Kaw Valley Center, earning $25,582 per year, and that she had worked there since 2005. Leona had worked part-time in the nursing industry for the past 20 years. Leona testified that she had applied for full-time work prior to June 2006, but had not received any offers. Leona testified that she was having a difficult time securing full-time employment because she did not have a bachelors degree. Leona also testified that Terry never had an objection to her working part-time.

Terry testified that he had worked for the Olathe School District since 1981 and earned $63,189 from that position in the 2006-2007 school year. Terry testified that he also received bonuses for coaching soccer, usually providing an additional $3,393 annual income. Terry stated he would be eligible to retire at age 57, and he was 54 years old at the time of trial. However, he stated he would likely stay with the school district another 6 years.

In addition to teaching, Terry owned a painting company that employed from three to nine people during the summer season. Terry estimated that his painting company earned $20,000 gross income for the summer painting season and that his estimated net profit was $10,000. Terry stated that he would continue painting 3 to 5 years because he had many bills, even though he would like to cut back on painting. Terry also testified that he has hung Christmas lights and cleaned gutters to make ends meet.

Regarding the decision for Leona to work part-time, Terry testified, "We always had an understanding that it was good for the kids to have their mom at home when they were young. That was not a question or a debate. I have no problem with that." However, he testified that once the children reached teenage years, Leona

could have maintained full-time employment. Terry requested that if the district court ordered maintenance, the district court should input additional income on Leona and make the maintenance requirement for a limited period of time because he would struggle to make the requested payments.

*District Court's decision*

The district court entered a decree of divorce on January 31, 2007. In the divorce decree, the district court ordered Leona and Terry to sell their marital residence and equally divide the proceeds after satisfying all debts. Leona was required to pay any mortgage payments so long as she continued to live in the property and to hold Terry harmless for any payments due while she resided there. Further, the district court ordered Leona and Terry to sell the duplex, and the district court ordered that Terry receive $4,000 from the sale of the property to reimburse him for the money used for repairs on the property. The district court then ordered that the parties equally divide the proceeds after satisfying all debts. The district court also ordered the parties to sell their home in Lawrence and equally divide the proceeds after satisfying all debts.

The district court further ordered that the parties equally divide the AXA Enterprise account, the ING account, and Terry's KPERS retirement account. The district court also set aside the World Savings accounts, including the CD, to Terry as his separate property. Further, each party received a vehicle as separate property, with Leona receiving the minivan.

Finally, the district court denied Leona's request for spousal maintenance and stated: "The Court acknowledges that [Leona] may have a need for spousal maintenance but also acknowledges that needs of parties change as lifestyles change as a result of a divorce, which requires the parties to live two separate lifestyles." The district judge further stated: "Considering how I've dealt with the claim of nonmarital property, how I've dealt with the sweat equity claims and the division of other assets, I think this is not an appropriate case for maintenance. And so I'm not going to award any maintenance." Leona timely appeals.

## Property division

Leona claims the district court erred in setting aside the World Savings accounts to Terry. Leona argues that Terry's inheritance had been commingled and largely spent and the CD was originally made as a gift from Terry's father to both Leona and Terry. Leona argues that the district court's decision was erroneous because the district court's designation of the World Savings accounts as Terry's separate property, when the accounts were held as joint accounts, violated K.S.A. 23-201(b) and K.S.A. 2007 Supp. 60-1610(b).

Terry argues that the district court did not abuse its discretion in setting aside the World Savings accounts to him and maintains that the division was fair and equitable. Terry notes that the district court ordered the equal division of proceeds from the sale of the parties' three properties, the equal division of Terry's retirement accounts, and awarded the minivan, which was paid off, to Leona. Terry further argues that there was no evidence that Terry's father gifted the CD to both parties and that Terry's relationship to his father was the most important factor to determine whether the CD was properly awarded to him.

The district court has broad discretion in adjusting the property rights of parties involved in a divorce action, and its exercise of that discretion will not be disturbed by an appellate court absent a clear showing of abuse. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the district court, then it cannot be said that the district court abused its discretion. *In re Marriage of Bradley*, 282 Kan. 1, 7, 137 P.3d 1030 (2006). The party asserting that the district court abused its discretion bears the burden of showing such abuse. *In re Marriage of Larson*, 257 Kan. 456, 463-64, 894 P.2d 809 (1995).

Under K.S.A. 2007 Supp. 60-1610(b)(1), the district court "shall divide the real and personal property of the parties, . . . whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage or acquired by the spouses' joint efforts." The district court is not required to award

to each the property inherited by each during the marriage, but is required to make a fair and equitable division of the property. *McCain v. McCain*, 219 Kan. 780, 787, 549 P.2d 896 (1976). When a district court divides property pursuant to a divorce, the court shall consider:

"the age of the parties; the duration of the marriage; the property owned by the parties; their present and future earning capacities; the time, source and manner of acquisition of property; family ties and obligations; the allowance of maintenance or lack thereof; dissipation of assets; the tax consequences of the property division upon the respective economic circumstances of the parties; and such other factors as the court considers necessary to make a just and reasonable division of property." K.S.A. 2007 Supp. 60-1610(b)(1).

Leona argues the district court contradicted itself by finding that Terry's inheritance was commingled and then awarding the World Savings accounts to Terry as his separate property. At trial, the district court stated that it was clear that there was a large amount of money that came into the marriage by virtue of Terry's inheritance. Relying on the Johnson County Family Court Guidelines (guidelines), the district court noted that when gifts come from the family of one of the parties, the gifts should revert to that party upon divorce. The district court instructed Terry's counsel that he would need to show that there were identifiable assets that came from the inheritance. However, it was subsequently pointed out to the district court that the World Savings CD had not been spent by the parties and that this asset was directly traceable to Terry's father.

The district court did not contradict itself, therefore, by finding that some of Terry's inheritance was commingled and spent, while also finding that the World Savings CD was a traceable individual asset comprised of Terry's inheritance. It appears the district court relied heavily on the guidelines in reaching its decision. The guidelines were created by the Family Law Bench-Bar Committee of the Johnson County Bar Association and have not been adopted by any court. Nonetheless, because the district court mentioned the guidelines and used them to arrive at its decision, a review of the pertinent provisions is necessary.

The guidelines define individual property as "[t]he entry value of property received during the marriage by will or inheritance from the party's family member." 2005 Johnson County Family Law Guidelines 37-38. The guidelines indicate that the relationship of the donor(s) to the party in the marriage will be the guiding force in determining the status of the property, not the designated donee or intent at the time of the gift. The guidelines further state that individual property should be restored to the party "for or by whom it was acquired before consideration of the division of mutual property." 2005 Johnson County Family Law Guidelines 38.

Here, the district court did not abuse its discretion when, after considering the guidelines, the district court set aside the World Savings accounts to Terry. Clearly the World Savings accounts, especially the CD, were individual assets given by Terry's father to Terry as inheritance. There was significant testimony, even from Leona, that Terry's father had provided the couple with a CD that now totaled $53,631, which remained a present asset traceable to Terry's father.

This court has previously held that it is not an abuse of discretion for the district court to refuse to follow the recommendations of the guidelines. *In re Marriage of Schwien*, 17 Kan. App. 2d 498, 505, 839 P.2d 541 (1992). Likewise, this court should not find that it is an abuse of discretion for the district court to follow the guidelines and set aside inheritance received by one spouse during the marriage when the inheritance is able to be located and traced. So long as neither action is arbitrary, fanciful, or unreasonable, a district court does not abuse its discretion. *Bradley*, 282 Kan. at 7.

Finally, Leona misunderstands the commands of K.S.A. 23-201(b) and K.S.A. 2007 Supp. 60-1610(b) concerning the division of assets held in joint tenancy. These statutes do not prohibit the district court from setting aside joint accounts to one spouse where the district court can trace the funds to that party's inheritance. K.S.A. 23-201(b) states that all property owned by spouses, whether held individually or by the spouses in some form of coownership, becomes marital property at the time when one spouse commences an action for divorce. "Each spouse has a common ownership in marital property which vests at the time of com-

mencement of such action, the extent of the vested interest to be determined and finalized by the court, pursuant to K.S.A. [2007 Supp.] 60-1610 and amendments thereto." K.S.A. 23-201(b); *Nicholas v. Nicholas*, 277 Kan. 171, 178, 83 P.3d 214 (2004).

K.S.A. 23-201(b) gives ownership interests to each spouse in joint property and individually held property once an action for divorce is filed *pending the resolution of the divorce*. While K.S.A. 23-201(b) deals with the parties' property at the time one spouse commences an action for divorce, K.S.A. 2007 Supp. 60-1610(b) deals with the district court's adjudication of property in a divorce action. Nowhere in K.S.A. 23-201(b) or K.S.A. 2007 Supp. 60-1610(b) does it say what Leona argues—that a district court cannot set aside Terry's inheritance as Terry's separate property. Here, the parties' joint accounts at World Savings constituted marital property, but the district court was free to set aside the accounts to Terry based on the evidence that a significant portion of the accounts was part of his inheritance. Because district courts are granted wide discretion in dividing property in a divorce action and Leona has failed to show that the district court's division was fanciful, arbitrary, or unreasonable, we conclude that the district court did not abuse its discretion in setting aside the World Savings accounts, including the CD, to Terry.

### Spousal maintenance

Next, Leona claims the district court abused its discretion in failing to award her spousal maintenance. Leona specifically argues that the district court failed to consider the requisite factors before denying her maintenance. Terry argues that the district court considered all the necessary factors, including the nature of the court's division of the property, in deciding not to award maintenance to Leona.

The district court has wide discretion regarding spousal maintenance, and an appellate court will only disturb a judgment regarding maintenance if there was a clear abuse of discretion. *In re Marriage of Day*, 31 Kan. App. 2d 746, 758, 74 P.3d 46 (2003). Judicial discretion is abused when the judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to

the propriety of the action taken by the district court, then it cannot be said that the district court abused its discretion. *Bradley*, 282 Kan. at 7. The party asserting that the district court abused its discretion bears the burden of showing such abuse. *Larson*, 257 Kan. at 463-64. However, the district court is required to comply with the statutes authorizing payment of support and maintenance, and failure to do so is reversible error. *In re Marriage of Cline*, 17 Kan. App. 2d 230, 234, 840 P.2d 1198 (1992).

A maintenance award must be fair, just, and equitable under all the circumstances. K.S.A. 2007 Supp. 60-1610(b)(2). The purpose of spousal maintenance is to provide for the future support of the divorced spouse, and the amount of maintenance is based on the needs of one of the parties and the ability of the other party to pay. *Carlton v. Carlton*, 217 Kan. 681, 681, 538 P.2d 727 (1975).

In *Williams v. Williams*, 219 Kan. 303, 306, 548 P.2d 794 (1976), the court set forth elements that a district court may consider in determining whether to award maintenance, including: (1) the age of the parties; (2) the parties' present and prospective earning capabilities; (3) the length of the marriage; (4) the property owned by the parties; (5) the parties' needs; (6) the time, source, and manner of acquisition of property; (7) family ties and obligations; and (8) the parties' overall financial situation. There factors are nearly identical to the factors set forth in *In re Marriage of Sommers*, 246 Kan. 652, 654-55, 792 P.2d 1005 (1990), which the district court stated it considered when discussing Leona's request for spousal maintenance.

Leona argues that the district court failed to properly consider the necessary factors in determining whether to grant spousal maintenance and that such failure constitutes reversible error. Specifically, Leona argues that while the age, property acquisition, and family ties factors may be equal between the parties, the remaining factors should have required that the district court order maintenance.

The length of the marriage was not a contested issue at trial, as both parties agreed that the parties were married in 1974. By the time the district court finalized its journal entry in this case, the parties were married 32 years. However, the district court should

not award maintenance on one single factor without considering all other factors, such as the parties' circumstances, future income, and need. *In re Marriage of Sedbrook*, 16 Kan. App. 2d 668, 672, 827 P.2d 1222, *rev. denied* 251 Kan. 938 (1992) (district court abused its discretion when it resolved the issue of maintenance based solely on the party's cohabitation and failed to evaluate other factors).

Regarding the parties' present and prospective earning capabilities, it is clear there was income disparity. Leona's domestic relations affidavit showed that she received a monthly gross income of $1,629.33 and Terry's domestic relations affidavit showed his monthly gross income of $6,019.54, based only on his employment at the Olathe School District. However, there was less disparity in the parties' net incomes. Leona's net monthly income was $1,269.50, while Terry's net monthly income was $3,298.08.

The parties' overall financial condition was clearly an issue the district court considered when denying Leona maintenance. There was evidence that Terry worked three or more jobs each year, that he would like to cut back on the amount of jobs he worked but could not do so because of the bills, and that the reason for Leona to work part-time—because she wanted to be home with her children—was no longer a factor. Terry testified at trial that if the district court ordered maintenance, he would struggle to make the payments. Further, there was no evidence that Leona could not obtain full-time employment in the future, only that she was having difficulty finding a position at the time of trial.

The district court specifically stated that it considered the nature of the court's division of property in deciding not to award maintenance to Leona. In the property division, the district court rejected Terry's request to award him $30,000 from the Lawrence home as reimbursement for inheritance money. The district court also refused to reimburse Terry $21,000 of inheritance money used to pay off Leona's minivan and instead awarded the minivan to Leona free from any incumbrance. Presumably the division of these assets would have been different if the district court had decided to award maintenance to Leona. The district court also adequately provided for Leona's retirement by awarding her one-

half of Terry's KPERS retirement account, one-half of the AXA Enterprise retirement account, and one-half of the ING account even though these assets were funded entirely through Terry's earnings.

It is also significant to note that the district court awarded temporary maintenance to Leona pending the outcome of the divorce. The district court entered a temporary order requiring Terry to pay spousal maintenance in the amount of $841 per month, which amounted to over $12,000 in maintenance during the 15 months that the divorce action was pending. This was a significant amount of support which helped Leona to make the transition from being married to living as a single person.

When the district court's findings supporting maintenance are supported by the evidence, this court will not second guess the district court's decision. Although the record contains evidence which may have supported a different disposition in this case, the record also contains substantial competent evidence supporting the district court's decision to deny Leona's request for maintenance. We are unwilling to conclude that no reasonable person would have adopted the position taken by the district court. Accordingly, we conclude the district court did not abuse its discretion in denying Leona's request for maintenance.

Affirmed.

GREEN, J., concurring in part and dissenting in part: I concur in the majority's decision concerning the division of property issue. Nevertheless, I dissent from the majority's decision affirming the trial court's judgment not to award spousal maintenance to the appellant, Leona R. Hair.

The question whether Leona is entitled to spousal support hinges on the interpretation and application of the judicial factors outlined by our Supreme Court in *In re Marriage of Sommers*, 246 Kan. 652, 654-55, 792 P.2d 1005 (1990). In *Sommers*, our Supreme Court included the following judicial factors in assessing the amount of maintenance to award:

(1) the age of the parties;

(2) the parties' present and prospective earning capacities;

(3) the length of the marriage;

(4) the property owned by the parties;

(5) the parties' needs;

(6) the time, source and manner of acquisition of property;

(7) the family ties and obligations; and

(8) the parties' overall financial situation.

See also *Williams v. Williams*, 219 Kan. 303, 306, 548 P.2d 794 (1976) (fault included). These previously mentioned factors are strikingly similar to the statutory factors listed under K.S.A. 2007 Supp. 60-1610(b)(1). Those statutory factors are used by our trial courts as a guide in the property division phase of a divorce action.

As the majority has stated, an appellate court reviews a trial court's decision not to award maintenance under an abuse of discretion standard. Typically, when a trial court makes a discretionary decision " 'within the legal standards and takes the proper factors into account in the proper way, the [trial court's] decision is protected even if not wise.' [Citation omitted.]" However, an " '[a]buse is found when the trial court has gone outside the framework of legal standards or statutory limitations, or when it fails to properly consider factors on that issue given by the higher courts to guide the discretionary determination.' [Citations omitted.]" *Dragon v. Vanguard Industries, Inc.*, 282 Kan. 349, 354, 144 P.3d 1279 (2006).

Although trial courts have wide discretion in determining whether to award maintenance, they may not ignore a dependent spouse's financial need for support and the ability of the other spouse to pay support. *In re Marriage of Kuzanek*, 32 Kan. App. 2d 329, 330, 82 P.3d 528 (2004), *rev'd on other grounds* 279 Kan. 156, 105 P.3d 1253 (2005) (spousal maintenance is based on a financial need and a financial ability). In determining whether to award maintenance, trial courts are to consider the eight judicial factors set out in *Sommers*, 246 Kan. at 654-55, in applying their discretion. See *Williams*, 219 Kan. at 306 (setting out the original eight factors that should be considered in fixing maintenance). This type of discretion is commonly referred to as guided discretion because it requires trial courts (1) to properly consider judicial factors or legal standards applicable to a particular issue and (2) to

stay within the framework of those factors or legal standards in applying their discretion. *Dragon*, 282 Kan. at 354.

Here, the trial court cursorily stated that it had considered the laundry list of factors contained in *Sommers*. Nevertheless, the record is devoid of any discussion by the trial court on how it specifically considered and applied the eight *Sommers'* factors. See *Dragon*, 282 Kan. at 354 (The provisions of the statute must be applied and rigorously analyzed.). Although the eight *Sommers'* factors have not been enacted into statutory factors, these factors were judicially created by our Supreme Court to guide trial courts' discretionary determination whether to award maintenance. Indeed, if trial courts were allowed to ignore the proper consideration and analysis, on the record, of the *Sommers'* factors, appellate courts would be rendered helpless to determine if trial courts have abused their discretion in whether to award maintenance.

Turning to the *Sommers'* factors, I note that Leona questions whether the trial court's consideration and application of the *Sommers'* factors are sufficient to support its conclusion not to award maintenance. Leona has conceded for the sake of argument that the following factors are essentially equal as between her and Terry:

(1) the age of the parties;

(6) the time, source and manner of acquisition of property; and

(7) the family ties and obligations.

Nevertheless, Leona argues that the remaining *Sommers'* factors favor an award of maintenance. I agree.

Let us consider the remaining *Sommers'* factors. Regarding factor (2), the parties' present and prospective earning capacities, this factor clearly favors Terry. In determining Terry's base salary as a teacher, the trial judge stated: "I'm going to find that Mr. Hair's base salary for school year 2006-2007 is a total of $75,718.29." This amount represented a gross monthly income of $6,309.86. Significantly, Terry's monthly gross income of $6,309.86 is almost $300 more per month than the monthly gross income ($6,019.54) that Terry had listed in his domestic relations affidavit. On the other hand, the record shows that Leona had a gross monthly income of $1,629.33. As a result, Terry's monthly gross income was nearly

four times that of Leona's monthly gross income. Moreover, a review of the record shows that the trial court did not consider, on the record, the substantial disparity in earning capacities between Terry and Leona.

In particular, Leona testified that she had been unable to obtain full-time employment. Testifying about her obstacles to finding full-time employment in the nursing field, Leona stated:

"Well, I think that they [prospective employers] tend to want to hire more part time so that they don't have to offer medical insurance. But I also think that when I went to school, we got a diploma. I don't have a bachelors. I don't have a BSN [Bachelor of Science in Nursing]. If they look at one person who has a bachelors. And I have a diploma, and they get people—prefer people with a bachelors. I think when I go in and get interviewed and they see me, it's easier to pick a younger candidate, and that's probably just my own feeling about it."

This statement paints a revealing picture of Leona's dismal prospects for gaining full-time employment in the nursing field.

In addition, Leona's age and sex would have reduced her chances at obtaining full-time employment in many other employment areas. For example: Leona was a 54-year-old female when she made that ominous statement about her unsuccessful job searches in the nursing field. Leona's sex and age should have immediately drawn the trial court's attention to the following considerations.

When "the dependent spouse is the wife, the court should consider the impact of sex and age discrimination on the spouse's ability to obtain full time permanent employment. Although women are able to freely enter the job market, there is still a disparity in their ability to earn." 2 Elrod and Buchele, Kansas Law and Practice, Kansas Family Law § 10.62, p. 45 (1999). Here, the record shows that Leona had worked only part-time in the nursing field for the last 20 years. In particular, Terry acknowledged that he and Leona had a mutual understanding that she would work only part-time while raising their three daughters. Also, the record shows that Leona lacked a BSN degree, which Leona testified had been an obstacle to her obtaining full-time employment in the nursing field. See *In re Marriage of Zimmerman*, No. 95,772, unpublished Court of Appeals opinion filed March 2, 2007 (no abuse of discre-

tion by the trial court when it awarded spousal support of $500 per month for 60 months to a 51-year-old woman who had a high school education, who had worked outside the home for only 4 years during the 27-year marriage, and who had never earned more than minimum wage, while, in contrast, former husband had vocational training, had a long history of steady employment, and had income-producing inherited property).

Under factor (3), the length of the marriage, the record showed that the parties had a 32-year marriage. I could find no mention in the record where the trial court specifically considered the length of the parties' marriage in determining whether to award maintenance.

With regard to factor (4), the property owned by the parties, the trial court awarded Terry the World Savings accounts—including a $53,631 certificate of deposit (CD)—as inherited property. These accounts represented a substantial liquid asset. In addition, the CD was an income-producing asset. See *In re Marriage of Callaghan*, 19 Kan. App. 2d 335, 340, 869 P.2d 240 (1994); *Zimmerman*, slip op. at 9 (The court should consider whether one spouse has been awarded income producing property.).

In regard to factor (5), the parties' needs, Leona detailed her lack of success in obtaining full-time employment, even in employment areas unrelated to the nursing field. Moreover, she testified about her significant financial need, which is discussed under factor (8).

Finally, in regard to factor (8), the parties' overall financial situation, Leona showed a significant financial need. In fact, Terry's counsel conceded that Leona had a financial need: "If the Court orders maintenance, I [believe] somewhere around $400 a month for a more limited period of time, maybe six years. But I think that is fair and equitable considering the circumstances here." Moreover, "I have no doubt that on some level Mrs. Hair needs maintenance to *survive.*" (Emphasis added.) What a poignant statement! Indeed, this statement came from the lips of Terry's counsel. Similarly, the trial court also recognized that Leona had a need for spousal support: "The Court acknowledges that [Leona] may have a need for spousal maintenance but also acknowledges that needs

of parties change as lifestyles change as a result of a divorce, which requires the parties to live two separate lifestyles."

Further, the housing situation favored Terry. Although Leona was allowed to live in the marital residence until the house could be sold, the trial court made her solely responsible for the monthly mortgage payments on the property. On the other hand, Terry had been favored with rent-free housing: residing in his late father's home.

In determining whether to award maintenance, courts generally look to "[t]he need of the dependent spouse combined with consideration of the ability of the other spouse to pay . . . ." See 2 Elrod and Buchele, Kansas Law and Practice, Kansas Family Law § 10.62, p. 45; see also *In re Marriage of Kuzanek*, 32 Kan. App. 2d at 330 (spousal support is based on financial need and financial ability); *In re Marriage of Day*, 31 Kan. App. 2d 746, 74 P.3d 46 (2003) (no abuse of discretion by the trial court when it awarded spousal support to wife of $311 for 120 months using Johnson County guidelines when wife would have $2,150 per month for her and two minor children and husband would have $2,750 for himself). In summary, the record shows that Leona had a major financial need and that Terry had the financial ability to pay spousal maintenance.

When a trial court neglects to properly consider the factors given by our Supreme Court to guide a discretionary determination, it constitutes an abuse of discretion. *Dragon v. Vanguard Industries, Inc.*, 277 Kan. 776, 779, 89 P.3d 908 (2004); see *In re J.D.C.*, 284 Kan. 155, 162, 159 P.3d 974 (2007) ("If among other things, a district court's decision goes outside the legal framework or *fails to properly consider statutory limitations,* it constitutes an abuse of discretion." [Emphasis added.]); see also *State v. Murdock*, 286 Kan. 661, 672-73, 187 P.3d 1267 (2008) (establishing judicial factors that would furnish a guide for a trial court's discretion and for an appellate court when reviewing the exercise of such discretion). Here, the record shows that the trial court abused its guided discretion when it neglected to properly consider and analyze the *Sommers'* factors in applying its discretion whether to award maintenance.

The majority, however, contends that the trial court did consider the *Sommers'* factors in this case. Yet, I note that the majority opinion is lacking any discussion on how and when the trial court specifically considered and applied, on the record, the *Sommers'* factors. In *Zimmerman,* this same panel, in affirming the trial court's award of maintenance, made specific mention of how the trial court considered and applied, on the record, some of the *Sommers'* factors in making an award of maintenance. Slip op at 8-9.

If speculation is the test as to whether the trial court adequately considered and applied the *Sommers'* factors, the record more readily supports the contrary inference. In addition, I would maintain that the choice the trial court made in its cursory consideration of the *Sommers'* factors, whatever they might have been, was contrary to the evidence.

In brief, there is abundant evidence that Leona has a significant need for spousal support. This leaves but one question: What evidence is there that Terry does not have the ability to pay spousal support? Just from his main occupation as a teacher, the trial court determined that Terry's gross income is $75,718.29. Terry testified that he planned to teach for another 6 years. Moreover, Terry's gross income from his summer painting business is $20,000. Terry testified that he planned to continue his painting business for another 3 to 5 years. If Terry's teaching and painting incomes are added together, his gross income is nearly $96,000, which does not include the income he receives from the $53,631 World Savings' CD. As a result, the evidence shows that Terry has an ability to pay spousal support. Moreover, Terry's attorney conceded this telling point in his closing argument to the trial court.

Given the trial court's generous property division award in Terry's favor, I would reverse the trial court's no maintenance award and remand this matter to the trial court to make an appropriate award of spousal maintenance.