NOT DESIGNATED FOR PUBLICATION

No. 118,736

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
JASON PEFFLY,
*Appellee*,

and

BRITTAN MCCLANAHAN,
formerly Brittan Peffly,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; MICHAEL E. WARD, judge. Opinion filed June 7, 2019. Affirmed.

*Brian R. Carman*, of Stinson, Lasswell & Wilson, L.C., of Wichita, for appellant.

No appearance by appellee.

Before MALONE, P.J., SCHROEDER, J., and MCANANY, S.J.

PER CURIAM:  Brittan McClanahan appeals the district court's decisions on property division and spousal maintenance in her divorce from Jason Peffly. McClanahan first argues that the district court erred in the manner that it divided funds in joint bank accounts traced to distributions from her family's trusts. Second, she argues that the district court erred by including an insurance settlement check for roof repair as a marital asset assigned to her. Third, she argues that the district court abused its discretion by ordering her to pay spousal maintenance to Peffly. Finally, she complains that the district

1

court took 11 months to issue a final ruling on property division and spousal maintenance. Finding no reversible error, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Peffly and McClanahan were married on June 28, 2003, and they had three children during their marriage. On May 14, 2015, Peffly filed a petition for separate maintenance in the Butler County District Court. McClanahan filed an answer and counterclaim for divorce. About one year after Peffly filed his petition, the district court granted the parties a divorce and scheduled a trial on all issues that remained unresolved, including child custody and parenting time. The district court also granted McClanahan's request to be restored to her maiden name of Brittan McClanahan.

The district court held a three-day bench trial beginning on October 25, 2016. Peffly testified that he received a bachelor's degree from Wichita State University in 1999. McClanahan received a bachelor's degree from the University of Kansas in 1997. They were married in 2003, and their children were born in 2005, 2008, and 2010.

Peffly testified that he was asking the court to enter an order for spousal maintenance from McClanahan based on the difference in their incomes. He testified that when he filed his petition, he was making around $100,000 per year and McClanahan was making $175,000 per year. He lost his pharmaceutical sales job of 12 years at about the same time that he filed, and since then he had been working for his father's construction company. He testified that he left his sales job to be available for his children because he traveled a lot with his previous job. But he testified that he did not make nearly as much money working for his father.

Peffly testified that while he and McClanahan were married, all of their income went into a joint account. He stated there was never an agreement to treat his bonuses or

2

her inheritance separately. He testified that around the time that he filed for separate maintenance, he withdrew around $160,000 from the parties' joint checking and savings accounts and left about the same amount in the accounts. He later agreed to put $86,000 of the funds he withdrew into his attorney's trust account. He testified that he spent most of the remaining money on bills, rent, and a deposit on another rental house.

Peffly asked the district court to divide equally the parties' cash assets. As for the marital residence, Peffly testified that he was not asking for it to be awarded to him, but he wanted to receive an equalization payment from which he could purchase his own property. Peffly testified that he was basing his request for spousal maintenance on the parties' incomes when they filed for divorce and not based on his current income. Ultimately, Peffly testified that he sought to retain the $86,000 in his attorney's trust account as well as receive an equalization payment from McClanahan of $145,667. He also requested spousal maintenance of $1,250 per month for 36 months.

Peffly's real estate appraiser testified that she appraised the marital residence and issued a report on November 9, 2015, which valued the home and surrounding property at $346,500. There was a mortgage on the property in the amount of about $180,000. The real estate appraisal was conducted after the roof of the residence had been damaged by hail and wind in May 2015.

McClanahan also testified at the trial. She testified that most of the money in the accounts from which Peffly withdrew half of the funds came from her inheritance. She testified about the dates and amounts of each distribution from her family's inheritance trusts, including a $173,308 distribution on February 12, 2015. The total amount of distributions McClanahan received from her family's trusts was $294,100, and she was asking the court to set aside this amount solely to her.

3

McClanahan did not call her appraiser to testify, but she testified about her marital estate spreadsheet, which valued the house at $304,000 from an appraisal conducted on September 26, 2015. But McClanahan admitted that she filled out a floodplain application as part of renovations she was doing on the house that included an appraised value of $347,000.

McClanahan testified that the parties received a check for $34,249 made out to both of them from Traveler's Insurance, which was proceeds from an insurance claim to repair the roof on the marital residence caused by hail and wind damage on May 26, 2015. She asked to be awarded the insurance proceeds, but testified that she did not include those funds on her marital estate spreadsheet because the funds would be used to repair the roof. She did not believe that it would be fair to put the insurance proceeds on her marital estate spreadsheet because the proceeds were designed to make the property whole again. She believed the home was worth only $304,000 after she repaired the damage from the storm. Finally, McClanahan testified that based on her income and expenses, she could not pay Peffly $1,250 every month for spousal maintenance.

At the end of the final day of the trial, the district court entered an oral ruling on custody and parenting time. That ruling is not being challenged in this appeal. The district court stated that "[t]he financial stuff can wait a little bit."

On September 11, 2017, almost 11 months after concluding the trial, the district court filed its final orders on asset/debt division. Relevant to this appeal, the district court determined that it would use a valuation date for the marital property as near as possible to the date of filing, which was May 14, 2015. The district court found that both of the appraisals of the marital residence were credible and comprehensive, so the court averaged them and arrived at a value of $325,520 for the marital residence, which the parties agreed would go to McClanahan. As for the insurance check from Traveler's, the district court ordered Peffly to endorse it and give it to McClanahan. The district court

4

ordered McClanahan to put the check proceeds toward repairs to the home or toward the mortgage balance. The district court found that applying the insurance proceeds to the home would increase its value, so the court placed the insurance proceeds as an asset on McClanahan's side of the assets and debts ledger.

Turning to the trust fund distributions, the district court noted that before Peffly filed his petition on May 14, 2015, the parties had a joint savings account that contained $322,403.91. On May 1, 2015, Peffly had withdrawn $161,201.95 from that account and deposited it in a savings account of his own. This left $161,253.17 remaining in the account, which McClanahan eventually put into an account only in her name. The district court found that McClanahan had shown that $294,100 of the funds in the parties' joint account before May 1, 2015, were directly traceable to trust distributions McClanahan received from family trusts. The district court then found that these funds should be carved out from the marital estate and set aside for McClanahan outside the distribution of marital assets in the case.

Thus, the district court determined that Peffly was not entitled to receive $147,050 of the $161,201.95 that he withdrew from the joint savings account on May 1, 2015. The district court then stated that it would place $147,050 on Peffly's side of the asset/debt ledger and would place nothing on McClanahan's side of the asset/debt ledger for the other $147,050, which would "effectively give her credit for the entire $294,100."

The district court's journal entry included a table on which the court entered all the assets and debts for which it had determined each party was responsible for or had received. The result of the district court's calculation was that McClanahan owed Peffly $28,181.99 as an equalization payment. The district court stated that it would issue a separate order on the remaining issues, which included spousal maintenance.

5

On September 25, 2017, McClanahan filed a motion to alter or amend the judgment under K.S.A. 2017 Supp. 60-259(f). In the motion, McClanahan argued that although the district court found that the trust funds she received during the marriage should be set aside solely to her when determining the parties' division of assets, she claimed the district court erred in including half the funds on Peffly's side of the assets/debt ledger. Peffly responded and argued that although he received a nonequal portion of the assets and debts of the parties, the division of assets and debts as reflected by the district court's asset/debt calculation was just and reasonable and could be considered equitable. Peffly also argued that the court should determine spousal maintenance by applying the customary approach of 20 percent of the difference in the parties' incomes.

The district court held a hearing on McClanahan's motion to alter or amend. McClanahan argued that the district court erred in including the $147,050 as one of Peffly's assets instead of counting it as an advance on any distribution he would receive as equalization. Peffly argued that leaving the entire inheritance out of consideration resulted in an inequitable distribution. He argued that even if the number on the assets/debt ledger was in the wrong place, the court's ultimate role was to make an equitable split, and according to Peffly, the district court's division was equitable.

Ultimately, the district court acknowledged that placing the $147,050 as an asset on Peffly's side of the ledger was inconsistent with its finding that the funds traceable to trust distributions was to be set aside as nonmarital property. The district court did not decide the issue at the hearing but stated that whatever final decision it made on the distribution of assets would affect its determination of spousal maintenance.

On October 26, 2017, the district court filed its amended and supplemental final orders. The district court noted that it had stated in its previous journal entry that it would treat $294,100 in the parties' joint account as of May 1, 2015, as McClanahan's sole

6

property. The district court acknowledged that placing $147,050 as an asset on Peffly's side of the ledger did not have the intended effect of carving out the entire amount to McClanahan. Nevertheless, the district court did not modify its original division of the trust income, finding that its original division of the assets and liabilities was just and equitable. The district court stated:

> "The parties were married for 12 years and dated 4-5 years prior to marriage. [McClanahan] retains the marital home and now has $34,248 with which to make needed repairs. [Peffly] either has or will need to establish and furnish a different residence for himself and the children when they are with him. As noted hereafter, [McClanahan]'s historical income exceeds that of [Peffly] by $42,819 per annum. Taking into account all factors, including her continued receipt of trust fund monies, [McClanahan]'s financial future appears to be more secure than [Peffly]'s. Accordingly, this Court declines to alter or amend its earlier asset/debt distribution."

The district court also found that spousal maintenance was appropriate but not to the extent or duration Peffly requested. The district court determined that Peffly's domestic relations affidavit and other evidence established his need for spousal maintenance and also showed that McClanahan had the ability to pay spousal maintenance. Ultimately, the district court ordered McClanahan to pay Peffly $714 per month for 24 months. The district court stated:

> "Although [Peffly]'s earnings are down from previous years, his work experience and formal education should equip him to regain his prior earning capacity or perhaps exceed the same at some point in the near future. He has $86,000 in his attorney's trust account, minus any attorney's fees. The Court has awarded him an equalization payment of $28,191.94. A monthly maintenance payment of $714 per month should suffice to bridge [Peffly]'s transition back into a better post-divorce financial position."

McClanahan timely filed a notice of appeal.

7

McClanahan first argues that the district court erred in the manner that it divided funds in the parties' joint bank accounts traced to distributions from her family's trusts. Peffly did not file a brief on appeal.

A district court's division of property in a divorce action is governed by K.S.A. 2018 Supp. 23-2801 et seq. The district court has broad discretion in adjusting the property rights of the parties in a divorce action, and this court should not disturb the district court's decision absent a clear showing of abuse of discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002). A court abuses its discretion when no reasonable person would agree with the district court's decision or when the decision is based on a factual or legal error. See *Critchfield Physical Therapy v. The Taranto Group, Inc.*, 293 Kan. 285, 292, 263 P.3d 767 (2011). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

The district court at first found that McClanahan had a right to retain the trust distributions she received from her family during the marriage. The district court explicitly found that $294,100 in deposits from the trust distributions should be treated as the McClanahan's sole property outside the distribution of marital assets. In Kansas, a person's inheritance acquired after marriage and whether held individually or jointly becomes marital property upon the commencement of an action for divorce. K.S.A. 2018 Supp. 23-2801. So although the district court at first stated that it intended to set aside the trust income to McClanahan, this asset generally would be treated as marital property.

Once the divorce action is commenced, it is the district court's task to make a "just and reasonable division" of all the marital property. K.S.A. 2018 Supp. 23-2802(c). The district court is to consider these factors when dividing the marital property:

"(1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property." K.S.A. 2018 Supp. 23-2802(c).

The district court has wide discretion in adjusting the financial obligations of the parties. See *In re Marriage of Monslow*, 259 Kan. 412, 414, 912 P.2d 735 (1996). Although the district court must make a fair and equitable division of the property, it need not be an equal property division. See *In re Marriage of Hair*, 40 Kan. App. 2d 475, 480-81, 193 P.3d 504 (2008).

The district court at first found that $294,100 of the funds in the parties' joint bank accounts should be excluded as a marital asset and set aside to McClanahan because the funds were directly traceable to her family trust distributions. Despite making this finding, the district court included $147,050 as an asset set aside to Peffly. At the hearing on the motion to alter or amend the judgment, the district court acknowledged that its treatment of the asset did not have the intended effect of carving out the entire amount to McClanahan. Nevertheless, the district court did not modify its original treatment of the trust income, finding that its overall division of the assets and liabilities was fair, just, and equitable. The issue for this court to decide on appeal, then, is whether this decision constituted an abuse of discretion.

The only argument McClanahan makes on appeal is that the district court must do what it at first stated it would do and set aside the entire inheritance to her. McClanahan points out that the district court's reason for not modifying its prior order was that it would be inequitable for Peffly to pay McClanahan because it would leave Peffly with hardly any liquid assets. The district court also stated that it was considering the

9

differences in the parties' incomes as well as their present and future earning capacities. But she argues that the district court already had considered these factors when issuing its first ruling, and it was arbitrary, fanciful, and unreasonable to give these factors more weight in its amended and supplemental order without the presentation of any additional evidence or an explanation about why those factors now weighed more heavily.

When considering McClanahan's motion to alter or amend, the district court acknowledged that it understood McClanahan's argument that it had incorrectly categorized the $147,050 when determining the property division, but the district court concluded that its original property division remained fair, just, and equitable. McClanahan does not show on appeal how this decision amounted to an abuse of discretion. McClanahan and Peffly had substantial assets and liabilities to be divided by the court. Typically, a person's inheritance acquired after marriage becomes marital property upon the commencement of an action for divorce. K.S.A. 2018 Supp. 23-2801. Although the district court must make a fair and equitable division of the property, it need not be an e*qual* property division. *In re Marriage of Hair*, 40 Kan. App. 2d at 480-81.

The burden is on Peffly to show that the district court abused its discretion in dividing the assets and liabilities of the parties. *Gannon*, 305 Kan. at 868. We find that Peffly has failed to meet his burden of showing an abuse of discretion. Significantly, the district court found that its final decision on the division of property would affect its determination of spousal maintenance. So in other words, if the district court had adjusted the property division as McClanahan requested in her motion to alter or amend the judgment, it is likely that such an adjustment would have resulted in a higher maintenance award to Peffly. For these reasons, we reject McClanahan's claim that the district court erred in the manner that it divided the income from her family's trusts.

McClanahan also argues that the district court erred by including an insurance settlement check for roof repair as a marital asset assigned to her. McClanahan argues that the insurance proceeds should not have been counted as an asset she received because the funds would be used to repair the roof. Because the district court had broad discretion in adjusting the property rights of the parties in a divorce action, this court should not disturb the district court's decision absent a clear showing of abuse of discretion. *In re Marriage of Wherrell*, 274 Kan. at 986.

The district court ordered McClanahan to apply the $34,249 insurance check toward repairs to the residence, which the court was awarding to McClanahan as part of the property division. The district court found that applying the insurance proceeds to the home would increase its value, so it placed the insurance proceeds as an asset on McClanahan's side of the assets and debts ledger.

We find that the district court's treatment of the insurance check was not unfair because (1) the appraisals on which the court relied to value the home were conducted after the property damage had occurred and (2) the district court specifically found that applying the insurance proceeds to the home would increase its value. Thus, although McClanahan needed to use the insurance proceeds to repair the roof, it increased the value of the residence that was being awarded to her as part of the property division. McClanahan fails to show how the district court's treatment of the insurance proceeds constituted an abuse of discretion.

Moreover, the district court ultimately found that the $28,181.94 equalization payment was fair, just, and equitable. So any adjustment in the property division caused by applying the insurance check differently would likely have resulted in a corresponding

11

adjustment in the equalization payment. For these reasons, we find that the district court did not err in the manner that it treated the insurance check as a marital asset.

SPOUSAL MAINTENANCE

McClanahan next argues that the district court abused its discretion by ordering her to pay spousal maintenance to Peffly. An award of spousal maintenance is governed by K.S.A. 2018 Supp. 23-2901 et seq. An appellate court generally reviews a district court's maintenance award for abuse of discretion. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 706-07, 229 P.3d 1187 (2010).

McClanahan argues that the district court abused its discretion in imposing spousal maintenance because it failed to analyze Peffly's purported need for maintenance and her ability to pay. She argues that the only evidence supporting Peffly's claim of monthly income and expenses on his domestic relations affidavit was his own testimony, and he presented no evidence—such as credit card, bank, or loan statements—to corroborate his reported expenses.

Contrary to McClanahan's claims, the district court considered the evidence, including the historical earning capacity of the parties, in deciding spousal maintenance. When the divorce was filed, McClanahan's annual income was about $175,000 and Peffly's annual income was about $100,000, but he earned even less after he lost his pharmaceutical sales job. The district court also relied on the fact that McClanahan received the marital home and Peffly needed funds to help him establish a residence. Finally, the district court factored the limited amount of the equalization payment Peffly was receiving into the amount he would need for maintenance. The district court ordered spousal maintenance in the amount of $714 per month for 24 months, which was less than half of what Peffly had requested. The court believed this would help bridge Peffly's

"transition back to a better post-divorce financial position." McClanahan has failed to show how this decision constituted an abuse of discretion.

Finally, as a separate issue, McClanahan argues that the district court violated Kansas Supreme Court Rule 166(b) (2019 Kan. S. Ct. R. 221), K.S.A. 2018 Supp. 60-252a, and the Kansas Code of Judicial Conduct, Cannon 2, Rule 2.5 (2019 Kan. S. Ct. R. 445) by failing to file its journal entry from the trial in a timely manner. McClanahan does not show that she raised this issue before the district court, nor does she argue why this court should consider her argument for the first time on appeal. See Kansas Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34). Moreover, McClanahan does not ask for relief based on this argument other than to "respectfully request[] that the Appellate Court take into consideration the impact an extremely long delay had on the District Court's rulings in this matter." We find that this issue is not properly preserved as a separate claim on appeal.

Affirmed.