NOT DESIGNATED FOR PUBLICATION

No. 120,745

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF THE MARRIAGE OF

TYLOR L. NELSON,
*Appellee*,

and

AIMEE S. NELSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; PAUL J. HICKMAN, judge. Opinion filed May 8, 2020.
Affirmed.

*Jennifer Wyatt*, of Wyatt & Sullivan, LLC, of Salina, for appellant.

No appearance by appellee.

Before HILL, P.J., GREEN and WARNER, JJ.

PER CURIAM: When Aimee and Tylor Nelson were divorced in 2015, they agreed
to—and the district court approved—offsetting child-support and maintenance
obligations. The intended result, articulated in the parties' mediation agreement, was that
"neither party" would make "a payment to the other party throughout the minority of the
minor children."

Aimee later gained residential custody of the children but did not seek to modify
the parties' previous support arrangement. Years later, she asked the district court to order

1

Tylor to pay unpaid maintenance from the time that she gained custody until 2017 and to pay child support going forward. The court denied her request for unpaid maintenance, noting the language and circumstances surrounding the parties' agreement demonstrated they intended the maintenance payments to be an offset of Aimee's previous child support, not a standalone support obligation. Aimee appeals, arguing the court had no authority to modify Tylor's previous maintenance obligation. Having reviewed the evidence and arguments, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Tylor filed a petition for divorce from Aimee in 2013. At that time, Tylor and Aimee had two minor children. The district court ordered the case to mediation, where the parties resolved questions of custody, parenting time, and property division. The court found Tylor and Aimee's mediation agreement just, fair, and equitable, and in April 2015 the court incorporated the mediation agreement into its final divorce decree.

In the agreement, Tylor and Aimee were granted joint custody of their children, but Tylor was given primary residential custody. The agreement included the following language regarding maintenance and child support:

> "The parties agree to and accept the Child Support Worksheet which is attached to this agreement. This worksheet provides that Dad owes maintenance to Mom in the amount of $549 per month and Mom owes child support to Dad in the amount of $565 per month. *The parties agree that these amounts will off-set each other so that neither party makes a payment to the other party throughout the minority of the minor children.*

> "In the event that Dad makes a request for child support, Dad shall automatically be ordered to pay maintenance in amount that offsets the amount of child support that is ordered to be paid by Mom." (Emphasis added.)

About two months later, Aimee learned that Tylor planned to move out of state with the children and thus filed a motion for emergency temporary orders to change the children's residency. The district court entered a temporary order granting Aimee residential placement of the children. Tylor then moved to reinstate the prior custody arrangement, with adjustments to accommodate a long-distance parenting schedule. Again upon agreement of the parties, the court denied Tylor's motion, leaving Aimee with primary residential custody of the children. Notably, the court's journal entry related exclusively to residential custody and parenting time. It did not address the offset provision (or any other provision) of the parties' mediation agreement.

Two years later—in July 2017—Aimee filed a "Motion to Modify Parenting Plan and Child Support, Motion to Enforce Order for Maintenance and Motion for Judgment." In that motion, Aimee sought to modify the parties' previous support obligations, asking the court to order Tylor to pay child support for their remaining minor child (the other had recently turned 18) and for a judgment for unpaid maintenance payments from September 2015 to July 2017. Aimee pointed out that the district court did not modify either child support or maintenance when she was granted residential custody of the children. She alleged she had received no financial assistance from Tylor in the two years since she had been granted residential custody.

The court modified the parties' child-support obligation going forward but denied Aimee's request for unpaid maintenance through July 2017. The court found Aimee's request for previous maintenance was problematic because the mediation agreement showed the parties intended the maintenance provision as an offset for child support, meant to nullify Aimee's child-support obligation. The court found Aimee's current request for maintenance was really an impermissible attempt—or proxy—to retroactively modify Tylor's child support. The request to enforce that maintenance "present[ed] a problem for the Court in the sense that we have no idea what the actual child support obligation might have—should have been at that time, had it been properly addressed."

The court opined that the modification of the parties' obligations "should have been done when the change of custody had been made":

> "[T]he Court can't go back in time and make an appropriate determination as to what the support obligation should have been. It could have been addressed, . . . we don't know why it wasn't addressed. But we can't go back on child support and the Court is going to deny the request to use the maintenance portion of it as a proxy for child support."

Aimee filed a motion to alter or amend the judgment, claiming the district court erred in referring to her effort to enforce maintenance as an attempted proxy for child support. Aimee argued that the court's failure to enforce the maintenance payment amounted to an impermissible modification of the order under K.S.A. 2019 Supp. 23-2712(b). In the alternative, Aimee asked the court to make specific factual findings that she did not owe child support to Tylor once she was granted residential custody of the children; Tylor did not make any maintenance payments after she gained residential custody; the mediation agreement was incorporated into the divorce decree; and the agreement did not provide any means for modification.

The district court incorporated the factual findings Aimee requested into the journal entry but denied her motion. Aimee appeals.

## DISCUSSION

The question before us is whether the district court erred in denying Aimee's request for past maintenance payments under the mediation agreement. The interpretation and legal effect of a mediation agreement, like other written instruments, is a question of law subject to unlimited review. *Einsel v. Einsel*, 304 Kan. 567, 579, 374 P.3d 612 (2016). Because mediation agreements are manifestations of the parties' intent, courts interpreting such agreements must ascertain that intent. 304 Kan. at 581. Courts follow the general principle that clear expressions of intent must be enforced as written. When,

4

however, the language of an agreement is ambiguous and fails to signal the parties' intent, courts apply the same rules of construction as we do for other written instruments. 304 Kan. at 581. In such circumstances, we look to the language employed, the circumstances existing when the instrument was made, the parties' objective, and any other relevant circumstances that clarify the real intention of the parties. *In re Marriage of Gerleman*, 56 Kan. App. 2d 578, 589, 435 P.3d 552 (2018). To the extent the district court considered matters outside the written mediation agreement, we review such findings for substantial competent evidence. *Geer v. Eby*, 309 Kan. 182, 190-91, 432 P.3d 1001 (2019).

K.S.A. 2019 Supp. 23-2712(b) limits a court's ability to modify a number of matters—including maintenance—settled by agreement in a divorce:

> "Matters settled by an agreement incorporated in the decree, other than matters pertaining to the legal custody, residency, visitation, parenting time, support or education of the minor children, shall not be subject to subsequent modification by the court except: (1) As prescribed by the agreement; or (2) as subsequently consented to by the parties."

Both parties have pointed to this statute to support their respective positions. Aimee argues the district court's ruling effectively modified the mediation agreement in violation of K.S.A. 2019 Supp. 23-2712(b) when it refused to enter a judgment for the unpaid amount of maintenance or to otherwise enforce the previous maintenance provision. Tylor asserted—and the district court found—that the parties included the maintenance provision only as an offset for Aimee's statutory child-support obligation and never intended it to be collected. The district court concluded that Aimee's attempt to collect that maintenance now was an effort to make up for her failure to seek a modification of the previous child-support obligation when she gained residential custody of the children.

5

The mediation agreement indicated that Tylor "owes maintenance to [Aimee] in the amount of $549 per month," and Aimee "owes child support to [Tylor] in the amount of $565 per month." It then explained that "[t]he parties agree that these amounts will off-set each other so that neither party makes a payment to the other party throughout the minority of the minor children." The district court found that this language evinced the parties' intent that "neither party [would make] a payment to the other" while the children were under the age of 18. That is, Aimee would not be required to pay her child-support obligation, and Tylor would not be required to pay maintenance—those obligations offset one another. We agree.

Aimee acknowledges the language in the mediation agreement and admits the parties intended to offset her previous child-support payments. But she argues that "the logical interpretation of the language of the Agreement is that the parties would be obligated to pay their respective . . . obligations" if circumstance changed and "the amounts no longer off-set each other." The agreement is silent, however, as to how the parties' respective support obligations would be modified should custody or other circumstances change. For example, if Aimee had residential custody, what would Tylor's support obligation be? Would Tylor be required to pay maintenance, given that the agreed-upon maintenance was previously included to offset Aimee's child-support payments? Absent a request to revisit the parties' previous obligations, the language of the mediation agreement controlled—"neither party" was required to "make[] a payment to the other party throughout the minority of the minor children."

The circumstances surrounding the parties' mediation agreement further demonstrate this intent. While the agreement references the attached child-support worksheet (which determined Aimee's child-support payments), neither the agreement nor the divorce decree included any explanation of how the parties arrived at the amount of the maintenance payment. But see *In re Marriage of Hair*, 40 Kan. App. 2d 475, 483-84, 193 P.3d 504 (2008) (listing various factors a court should consider when entering a

maintenance order), *rev. denied* 288 Kan. 831 (2009). Instead, the monthly maintenance amount is nearly equal to Aimee's child-support payments, allowing the two to offset one another. We also find it telling that Aimee sought to enforce the maintenance provision only through July 2017, when she asked the court to modify Tylor's child-support obligation, and then sought child support going forward. In short, the district court did not err in concluding Aimee was using maintenance—which the parties never intended to enforce—as a "proxy" for a previously nonexistent child-support obligation.

We affirm the district court's decision to deny Aimee's request for unpaid maintenance and to hold the parties to their intended agreement.

Affirmed.