NOT DESIGNATED FOR PUBLICATION

No. 115,303

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

KAREN THUMMEL,
*Appellee*,

and

WILLIAM J. THUMMEL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Thomas District Court; GLENN D. SCHIFFNER, judge. Opinion filed January 20, 2017. Affirmed

*Daniel C. Walter*, of Walter & Walter, LLC, of Norton, for appellant.

*John T. Bird* and *Todd D. Powell*, of Glassman, Bird, Brown & Powell, LLP, of Hays, for appellee.

Before POWELL, P.J., PIERRON and HILL, JJ.

*Per Curiam*: William Thummel (Bill) appeals his divorce from Karen Thummel. He argues he should have been granted spousal maintenance, the district court erroneously distributed assets and debts, and the court failed to accurately determine the goodwill of Karen's dental practice. The district court did not abuse its discretion when it did not grant Bill spousal maintenance, when it distributed the assets, and when it valued the goodwill of the dental practice. We affirm.

Karen and Bill were married July 31, 1993, when they were 22 years old. They had four children, one who had reached the age of majority at the time of the divorce, and the other three were 17, 13, and 8. Both Karen and Bill have a Bachelor of Science degree from Kansas State University. Bill is a farmer with 1,400 acres (mostly rented) under cultivation, and Karen is a dentist with a practice in Colby. Karen and Bill separated in May 2013. They were both 44 at the time of the divorce.

Before the separation, Bill worked as Karen's office manager at her dental practice. As office manager, Bill paid bills, negotiated loans, paid employees, and managed the payroll. He spent approximately 2-3 days a week for an hour or 2 at a time as office manager at the dental practice. Bill stated he would lose $600 a month from the loss of his position as Karen's office manager.

Karen and Bill owned a dental practice, the building it was housed in, a residence, farm ground, and farm equipment. Virtually all the assets and liabilities of the parties were acquired during the marriage through their joint efforts. Karen's net annual income from the dental practice was $250,000. Bill stated his income from farming annually was $50,000, although there was an argument made by Karen that it was closer to $80,000 because he drew against his operating line of credit. Testimony at trial also indicated his income might have been higher. Bill's tax return reflected a gross income from all farming activities in the amount of $451,617. The district court did not make a finding of fact regarding the amount of Bill's annual income. However, in the child support worksheet his annual income was put at $65,000.

Karen and Bill disagreed as to the value of the dental practice. Karen said the value was less than her net annual income, at approximately $248,340. Bill argued the value was $702,967. Another dentist in Colby was attempting to sell his dental practice and it had been on the market for 4 1/2 years with no success. That dentist was asking $500,000 for his practice that was in a larger building, which included rental property that

2

presented an opportunity for additional income as compared to Karen's practice. Karen testified she might have found a buyer for her dental equipment, but she had not found a dentist who was willing to pay any additional amounts of goodwill because Western Kansas is a shrinking market for dentists. In a letter from Adam Halabi, a dental equipment specialist, he stated "practices in areas that are almost 30 miles outside a larger city have almost no value other than the used value of the equipment." The district court found there did not appear to be any willing buyers for the dental practice and stated the value of the dental practice was $248,340, Karen's approximate annual net income.

Before Bill realized the parties were going to divorce, he had valued Karen's dental practice at $350,000 on their Farm Credit paperwork. Then, in 2012, when Bill was anticipating a divorce, he changed the value of the dental practice to approximately $648,000. He reached this number by adding $368,427 in goodwill to the dental practice. When Karen realized what had happened, she wrote "void" on the financial statement. At trial, Bill admitted he was influenced by his realization that a divorce was coming when he increased the value of the dental practice in 2012 on their Farm Credit documents.

The district court assigned $33,000 of a $66,000 debt to be paid by Bill to Karen. The debt was one half of a loan to the parties from the dental practice. Their accountant testified that this $66,000 note was distributions in excess of equity, so in order to avoid reporting capital gains on the note, they took it out. The $66,000 was not listed in Bill's proposed division of property under Karen's account receivables.

The district court also assigned Bill an asset of $26,534. This figure was a cash reimbursement Bill had received in 2012, however the figure was slightly off, which Karen conceded to in her response to Bill's motion to modify, and should have been $26,231. The court gave Karen three credits in the amount of $8,344, representing 4 months of house payments she had made without contribution from Bill; a credit in the amount of $10,000 for payments she had made for medical, dental, and school expenses

3

for the children; and a credit of $8,200 for health insurance paid on Bill's behalf. This amount totaled $26,544.

A debt in the amount of $46,621 to PHI Pioneer was not addressed and the district court did not assign it. Bill testified that the debt was to Pioneer Seed. He used the seed to plant his crops and he usually borrowed from Pioneer Seed and then paid it back in December of each year. He alone signed the note. In Bill's requested property division, PHI Pioneer was listed.

The district court valued the marital property at $1,751,441. Bill's net worth was totaled at $783,827 and Karen's was $967,614. Ultimately, the district court stated it had considered the usual factors and said Bill was not entitled to receive spousal maintenance from Karen. After the district court issued the divorce decree, Bill filed a motion to modify the decree. Karen filed a response, and the district court denied the motion to modify.

Bill appeals. Karen filed a cross-appeal but has abandoned that appeal in her filed brief.

An award of spousal maintenance is governed by K.S.A. 2015 Supp 23-2902. The district court has wide discretion regarding spousal maintenance. *In re Marriage of Hair*, 40 Kan. App. 2d 475, 483, 193 P.3d 504 (2008). An appellate court generally reviews a district court's maintenance award for abuse of discretion. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 706-07, 229 P.3d 1187 (2010). Judicial discretion is abused when the judicial action is arbitrary, fanciful, or unreasonable. *Hair*, 40 Kan. App. 2d at 483. If reasonable persons could differ as to the propriety of the action taken by the district court, then it cannot be said that the district court abused its discretion. 40 Kan. App. 2d at 483-84. Further, the district court abuses its discretion when it goes outside the applicable legal standards or statutory limitations when making its decision. *Dragon v. Vanguard*

4

*Industries, Inc.*, 277 Kan. 776, 779, 89 P.3d 908 (2004). Bill bears the burden of showing such an abuse. See *Hair*, 40 Kan. App. 2d at 484.

Bill argues that the standard used should be characterized as a question of law requiring de novo review. He relies on *State v. White*, 279 Kan. 326, 332, 109 P.3d 1199 (2005), which states: "[E]ven abuse of discretion standards can sometimes more accurately be characterized as questions of law requiring de novo review." *White*, a criminal case, relies on *Kuhn v. Sandoz Pharmaceuticals Corp*, 270 Kan. 443, 456, 14 P.3d 1170 (2000), to reach the conclusion that de novo should be applied. In *Kuhn*, the plaintiff argued that instead of an abuse of discretion standard, de novo was appropriate because the district court had failed to correctly apply the *Frye* standard, which presented an abstract question of law. Ultimately, the Kansas Supreme Court agreed. 270 Kan. at 456. However, *White* and *Kuhn* are not applicable to this case. This is a divorce case, not a criminal case, and it does not involve an abstract question of law. Therefore, abuse of discretion is the appropriate standard or review.

A maintenance award must be fair, just, and equitable under all circumstances. K.S.A. 2015 Supp. 23-2902(a). "The purpose of spousal maintenance is to provide for the future support of the divorced spouse, and the amount of maintenance is based on the needs of one of the parties and the ability of the other party to pay." *Hair*, 40 Kan. App. 2d at 484. In *Williams v. Williams*, 219 Kan. 303, 306, 548 P.2d 794 (1976), the court stated the following elements *may* be considered by a district court in determining whether to award spousal maintenance:

> "(1) the age of the parties; (2) the parties' present and prospective earning capabilities; (3) the length of the marriage; (4) the property owned by the parties; (5) the parties' needs; (6) the time, source, and manner of acquisition of property; (7) family ties and obligations; and (8) the parties' overall financial situation."

5

Bill argues that because the district court did not analyze the factors, and just stated it had taken the factors into consideration, we are without a sufficient record to review for an abuse of discretion. He cites to the concurring and dissenting opinions in *Hair*. In *Hair*, Judge Green stated he concurred in the majority's decision concerning the division of property, but dissented from the majority's decision affirming the trial court's judgment not to award spousal maintenance to the appellant. 40 Kan. App. 2d at 486 (J. Green, concurring in part and dissenting in part). In addressing Bill's argument, there are four things we must consider: (1) the dissent's analysis in *Hair*; (2) a case relied upon in the *Hair* dissent references a statute that was not in effect at the time of Bill and Karen's divorce; (3) when the findings of the district court are supported by evidence, it is not an abuse of discretion; and (4) dissents are not binding precedent.

*The* Hair *Dissent*

Bill argues that the district court failed to apply the factors for spousal maintenance and therefore abused its discretion. He cites to the dissent and concurrence in *Hair* for support of his argument. Specifically, he states that guided discretion requires the court to properly consider judicial factors to a particular issue and to stay within the framework of those factors when applying discretion.

In his concurrence and dissent in *Hair*, Judge Green wrote: "[I]n determining whether to award maintenance, trial courts are to consider the eight judicial factors set out in [*In re Marriage of*] *Sommers*, 246 Kan. [652, 654, 792 P.2d 1005 (1990)]." *Hair*, 40 Kan. App. 2d at 487. It appears the *Sommers* factors apply to the division of property, not to whether the district court should award spousal maintenance. Specifically, *Sommers* quotes the division of property statute from 1989 which states:

> "In making the division of property the court shall consider the age of the parties; the
> duration of the marriage; the property owned by the parties; their present and future

6

earning capacities; the time source and manner of acquisition of property; family ties and obligations; the allowance of maintenance or lack thereof; dissipation of assets; and such other factors as the court considers necessary to make a just and reasonable division of property." K.S.A. 60-1610(b)(1)(C).

Therefore, the dissent in *Hair* applied the division of property factors to the spousal maintenance analysis, which leads to an erroneous conclusion. The correct factors to apply to this issue are from *Williams*, which apply to spousal maintenance. See *Williams*, 219 Kan. at 306. Because the dissent cites to division of property factors, not spousal maintenance, Bill's argument is invalid.

*The Statute Relied on in* Sommers

Bill argues that the district court's lack of analysis and application of the factors for the spousal maintenance leaves us without a sufficient record to review for an abuse of discretion. This argument lacks merit because the statute relied upon in the concurrence and dissent of *Hair* is not applicable to spousal maintenance and requires a different analysis.

In his concurrence and dissent, Judge Green stated that in determining whether to award spousal maintenance, a trial court must consider the eight judicial factors set out in *Sommers*, 246 Kan. at 654-55. The *Sommers* court cited to K.S.A. 1989 Supp. 60-1610(b)(1), the division of property statute from 1989.

This statute applied to the division of property, not to spousal maintenance, and was the statute in effect in 1989. See *Sommers*, 246 Kan. at 654-55. As discussed previously, from the analysis of the two statutes, the correct statute applicable to this argument is spousal maintenance, not division of property. Regardless, this statute is inapplicable to Bill's argument because it was not the statute in effect at the time of the

divorce commencement. The correct statute for this analysis is K.S.A. 2015 Supp. 23-2902.

There are no factors set out in the Kansas maintenance statute; however the *Williams* court created elements that may be considered in determining whether to grant spousal maintenance. 219 Kan. at 306. For the *Williams* elements, the court *may* consider them when deciding whether to grant spousal maintenance. 219 Kan. at 306. For the division of property statute, the court *shall* consider the elements set forth in the statute. K.S.A. 2015 Supp. 23-2802(c). Because of the difference between the analysis for spousal maintenance and division of property, specifically the difference between *may* and *shall*, Bill's argument that there is an insufficient record is incorrect, and the district court did not abuse its discretion.

*If the Findings of the District Court were Supported by Evidence, There was No Abuse of Discretion*

Bill argues that because the district court did not analyze each factor for spousal maintenance, it abused its discretion. However, the opinion in *Hair* demonstrates that the failure to analyze every factor in detail is not reversible error because the overall record on appeal can support a decision on maintenance. 40 Kan. App. 2d at 486. Specifically, *Hair* states: "When the district court's findings supporting maintenance are supported by the evidence, this court will not second guess the district court's decision." 40 Kan. App. 2d at 486. Because the district court here looked at all of the evidence, stated findings of fact in the divorce decree, and then made its decision, it did not abuse its discretion because the evidence supporting the divorce decree supports it's finding that spousal maintenance should not be granted.

*Dissents are Not Binding Precedent*

Bill cites to the concurrence and dissent in *Hair* to argue that the district court did not analyze the factors appropriately and, therefore, abused its discretion. "If a dissent created the law, it would not be styled as a dissent." Comment, *When the Dissent Creates the Law: Cross-Cutting Majorities and the Prediction Model of Precedent*, 58 Emory L.J. 207, 209 (2008). Essentially, dissents have no legally binding force and are considered dicta. Comment, 58 Emory L.J. at 209. Here, Bill cites to the concurrence and dissent in *Hair*. Specifically, he cites to the dissent. Because a dissent does not create the law and has no legally binding force, it is not a binding precedent in this case.

*Spousal Maintenance Analysis*

To revisit the elements, the *Williams* court stated the following elements *may* be considered by a district court in determining whether to award spousal maintenance:

> (1) the age of the parties; (2) the parties' present and prospective earning capabilities; (3) the length of the marriage; (4) the property owned by the parties; (5) the parties' needs; (6) the time, source, and manner of acquisition of property; (7) family ties and obligations; and (8) the parties' overall financial situation. 219 Kan. at 306.

Here, the district court found in the divorce decree that the parties were both 44 years old. Karen averaged $250,000 annually and Bill's income was somewhere between $50,000 and $80,000. They had been married for 22 years. They both owned a dental practice, the building it was housed in, a residence, farm ground, and farm equipment. After losing his position as office manager at Karen's practice, Bill was losing $600 a month. Virtually all of the assets and liabilities of Karen and Bill were acquired during their marriage. Karen was paying Bill $1,641 a month in child support. She also maintained health insurance for their children. Aside from health insurance, time with the

children and their expenses were to be shared equally between Karen and Bill. Lastly, the court set out all of their debts and assets which showed that Bill's assets were $1,259,892 and Karen's assets were $1,161,788. Bill's debts totaled $476,065, and Karen's debts totaled $194,174. In total, Bill's net was $783,827 and Karen's net was $967,614. In addition, Karen owed Bill $32,349.50.

"When the district court's findings supporting maintenance are supported by the evidence, this court will not second guess the district court's decision." *Hair*, 40 Kan. App. 2d at 486. Although the record contains evidence which might have supported a different disposition in this case, the record also contains substantial competent evidence supporting the district court's decision to deny the request for maintenance. See 40 Kan. App. 2d at 486. Based on the evidence, we cannot conclude that no reasonable person would have adopted the position taken by the district court, and therefore the district court did not abuse its discretion in denying the request for maintenance and is affirmed.

A district court's division of property in a divorce action is governed by K.S.A. 2015 Supp. 23-2801. Appellate review is for abuse of discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002); *Vandenberg*, 43 Kan. App. 2d at 715. The district court has broad discretion in adjusting the property rights of parties involved in a divorce action, and its exercise of that discretion will not be disturbed by an appellate court absent a clear showing of abuse. *Hair*, 40 Kan. App. 2d at 480. Bill bears the burden of showing such an abuse. See 40 Kan. App. 2d at 480.

The district court is not required to award to each spouse the property inherited by each during the marriage, but it is required to make a fair and equitable division of property. 40 Kan. App. 2d at 480-81. When a district court divides property in a divorce, it shall consider the factors outlined in K.S.A. 2015 Supp. 23-2802(c):

"(1) the age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property."

In the divorce decree, the district court assigned $33,000 in debt to be paid by Bill to Karen, which is half of a loan that Bill and Karen took out from the dental practice. Bill argues the district court inadvertently did not incorporate the loan into the accounts receivable for the dental practice. First, the $66,000 was distributions in excess of equity, so in order to avoid reporting capital gains on that $66,000, a note was taken out. This information was reported by Karen and Bill's accountant. Second, in Bill's proposed property division, he listed Karen's accounts receivables at a total of $2,100. He did not include the $66,000 in his proposed property division in Karen's accounts receivable. "An appellant has the burden to designate a record sufficient to establish the claimed error; without such a record, the claim of error fails." *City of Mission Hills v. Sexton*, 284 Kan. 414, 435, 160 P.3d 812 (2007). Because this figure was distributions in excess of equity and not listed under Karen's accounts receivables on Bill's proposed property division, the district court did not abuse its discretion with regard to distributing the $66,000.

The district court assigned Bill an asset of $26,534, which was labeled as Karen's payments to Bill for money owed to Karen A. Thummel cash on hand. The court then gave Karen three credits for 4 months of house payments; medical, dental, and school expenses for the children; and health insurance Karen paid for Bill. These amounts total $26,544. Bill argues that these are the same amounts and he should not be required to reimburse Karen for something that was awarded to him as an asset.

First and foremost, these are not the same amounts. There is a $10 difference between $26,534 and $26,544. Second, these are two completely separate numbers, not

duplicates. The first number, $26,534 is a cash reimbursement Bill received in 2012. In Karen's response to Bill's motion to modify, she stated the cash payment from 2012 was not shared with her, but was diverted in anticipation of their divorce. Karen did concede that the amount should have been $26,231 and not $26,534. However, the district court denied Bill's motion to modify and the amount was not changed. The second number is the three credits Karen received added up. Because these are separate numbers related to separate issues, the district court did not double count any payments or assets and therefore did not abuse its discretion.

Bill also states that because the district court failed to assign a debt listed to PHI-Pioneer in the amount of $46,621 it committed clear error. At trial, Bill stated the debt was to Pioneer Seed. He used the seed to plant his crops and borrowed from Pioneer Financial. Then, at the end of each year, he paid it back. Bill alone signed the note. In his proposed property division, Bill had the debt to PHI-Pioneer listed in his column, not in Karen's.

District courts are granted wide discretion in dividing property in a divorce action. *Hair*, 40 Kan. App. 2d at 480. While the division of property must be just and reasonable, it does not have to be an equal division. *In re Marriage of Roth*, 28 Kan. App. 2d 45, 48-49, 11 P.3d 514 (2000). Here, the marital estate net worth is $1,751,441. Bill's net totaled $783,827 and Karen's net totaled $967,614. Even if this loan were considered marital property, it was not an abuse of discretion when the marital estate was worth this much to not assign part of the debt to Karen, especially considering the division had to be just and reasonable, *not* equal. Therefore, the district court did not abuse its discretion when it did not assign the PHI-Pioneer debt.

To determine whether the district court correctly valued the professional goodwill, this court uses a two part standard of review. *In re Marriage of Hook*, No. 87,889 (Kan. App. 2002), unpublished opinion filed November 27, 2002, slip op. at 5-6. First, it must

12

be determined whether there was substantial competent evidence to support the award of goodwill. *Hook*, slip op. at 5. Second, it must be determined whether the trial court abused its discretion when it assigned a value of $248,340 to the goodwill of Karen's dental practice. *Hook*, slip op at 5-6.

Under K.S.A. 2015 Supp. 23-2801(a), "professional goodwill to the extent that it is marketable for that particular profession" is included in property owned by married persons. K.S.A. 23-2801(b) states that "each spouse has a common ownership in marital property, which vests at the time of commencement of such action."

In *Hook*, the appellant owned a dental practice that he stated was worth approximately $300,000. Neither party hired an expert to value the goodwill of the dental practice. The only evidence presented regarding the goodwill was testimony from the appellee. This court found there was substantial competent evidence to support the trial court's finding, and the trial court did not abuse its discretion when it valued the goodwill of the dental practice at $115,000. *Hook*, slip op. at 7.

Here, evidence was presented as to the value of the goodwill of the dental practice. First, Karen testified that the value was approximately $248,340. Bill disagreed and said it was $702,967. Karen testified at trial that another dentist in Colby was trying to sell his dental practice for $500,000. It had been on the market for 4 ½ years with no luck. His practice was in a larger building which included rental property. Karen said that she might find a buyer for her equipment, but not a buyer for additional goodwill because of the shrinking market for dentists in Western Kansas. Further, a letter written by a dental equipment specialist stated that practices in areas 30 miles outside larger cities have no value other than the used value of the dental equipment. Ultimately, the court found there were no willing buyers for the dental practice and the value was set at $248,340.

13

The district court did not abuse its discretion in determining the value of Karen's dental practice. The court found that, based on the evidence, the dental practice was not marketable and therefore did not assign additional goodwill. See K.S.A. 2015 Supp. 23-2801(a). It was also not an abuse of discretion to then not award Bill spousal maintenance based on the valuation of the dental practice. There is substantial competent evidence to support the district court's conclusion and the value of $248,340. The district court did not abuse its discretion.

Affirmed.